**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The People of the State of New York, by Attorney General Letitia James; the Commonwealth of Pennsylvania, by Attorney General David W. Sunday, Jr.; State of Colorado, ex rel. Philip J. Weiser, Attorney General, and Martha Fulford, Administrator; Maryland Office of the Attorney General; State of Nevada; State of New Hampshire; State of New Jersey, by Attorney General Jennifer Davenport; State of North Dakota, ex rel. Drew H. Wrigley, Attorney General; State of Oklahoma; State of South Dakota; Commonwealth of Virginia, ex rel. Jay Jones, Attorney General; State of Washington; and State of Wisconsin, | Case No: 1:26-cv-2117 (PAE)<br><br>Hon. Paul A. Engelmayer |
| Plaintiffs, | |
| v. | |
| OneMain Holdings, Inc.; OneMain Finance Corporation; OneMain Consumer Loan, Inc.; OneMain Financial Holdings, LLC; OneMain Financial Group, LLC; OneMain Financial, Inc., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS OR TO STRIKE**
**FOR FAILURE TO STATE A CLAIM, IMPROPER VENUE,**
**AND LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1
II.    FACTUAL BACKGROUND................................................................................2
III.   ARGUMENT......................................................................................................4

    A.    The Court Lacks Jurisdiction Over Claims Based on OneMain's Acts
         Implementing the CFPB Consent Order. ...................................................4

    B.    *Res Judicata* Bars CFPA Claims for Conduct Pre-Dating the Consent
         Order (Counts 1-6, 14-15).........................................................................9

         1.    The Complaint Relitigates Claims that Were Brought or Could
               Have Been Brought in a Prior Enforcement Action. ................................10
         2.    The States Stand in the CFPB's Shoes Regarding the CFPA
               Claims. ....................................................................................................12
         3.    The Consent Order Contemplated Preclusion of CFPA Claims.................13

    C.    Counts 5 and 6 of the Complaint Should Be Dismissed Because the States
         Have No Authority to Enforce the Truth in Lending Act.......................................15

    D.    States Other Than New York Cannot Establish Venue in This Court for
         Their CFPA Claims (Counts 1-6, 14-15). ...............................................17

    E.    At Least Five States Lack Standing to Assert CFPA Claims (Counts 1-6)...........21

         1.    New York.................................................................................................22
         2.    Wisconsin, Nevada, and Oklahoma ..........................................................25
         3.    Pennsylvania ...........................................................................................26

    F.    Counts 13-18 Fail to State a Claim as a Matter of Law........................................27

    G.    The States May Not Recover Civil Money Penalties Under Federal or
         State Law. ................................................................................................29

          1.    The States May Not Recover CFPA Penalties.............................................29
          2.    The States May Not Obtain State-Law Penalties in This Court. ..............30

    H.    All Remaining Claims in the Complaint Should Be Dismissed. ...........................33

IV.    CONCLUSION.................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
404 F.3d 566 (2d Cir. 2005)........................................................................................29

*Allen v. McCurry*,
449 U.S. 90 (1980)........................................................................................................10

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
825 F.2d 634 (2d Cir. 1987)....................................................................................10, 12

*American Fair Credit Ass'n v. United Credit National Bank*,
132 F. Supp. 2d 1304 (D. Colo. 2001)......................................................................5, 6, 7

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)......................................................................................................10

*Bakenie v. JPMorgan Chase Bank, N.A.*,
2012 WL 4125890 (C.D. Cal. Aug. 6, 2012)...............................................................5, 8

*Benton v. Bank of Am. Corp.*,
159 F. Supp. 3d 89 (D.D.C. 2016).................................................................................21

*Brown Media Corp. v. K&L Gates, LLP*,
854 F.3d 150 (2d Cir. 2017)...........................................................................................12

*Bruns, Nordeman & Co. v. Am. Nat. Bank & Tr. Co.*,
394 F.2d 300 (2d Cir. 1968)...........................................................................................20

*Bryant v. Koppers, Inc.*,
627 F.Supp.3d 466 (D. Md. 2022).................................................................................28

*Bustamante v. Napolitano*,
582 F.3d 403 (2d Cir. 2009)...........................................................................................20

*Camillus Clean Air Coal. v. Honeywell Int'l, Inc.*,
947 F. Supp. 2d 208 (N.D.N.Y. 2013)............................................................................6

*Cato Inst. v. Sec. & Exch. Comm'n*,
4 F.4th 91 (D.C. Cir. 2021)..............................................................................................5

*CFPB v. TransUnion*,
641 F. Supp. 3d 474 (N.D. Ill. 2022).......................................................................10, 11

# TABLE OF AUTHORITIES

(Continued)

**Page(s)**

*Commonwealth of Pa. v. Mid-Atl. Toyota Distribs., Inc.*,
704 F.2d 125 (4th Cir. 1983) ..................................................................22, 23

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*,
529 U.S. 193 (2000) ..............................................................................17

*Council for Owner Occupied Hous., Inc. v. Abrams*,
125 A.D.2d 10 ......................................................................................23

*Cruz-Miguel v. Holder*,
650 F.3d 189 (2d Cir. 2011) ....................................................................21

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000) ......................................................................33

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ....................................................................33

*Doe v. Indyke*,
457 F. Supp. 3d 278 (S.D.N.Y. 2020) .......................................................29

*Ferguson v. Ross*,
38 F. 161 (C.C.E.D.N.Y. 1889) ...............................................................31

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*,
445 U.S. 375 (1980) ..............................................................................4

*Harmon Indus., Inc. v. Browner*,
191 F.3d 894 (8th Cir. 1999) ...................................................................13

*Huntington v. Attrill*,
146 U.S. 657 (1892) ..........................................................................30, 31

*INS v. Cardoza–Fonseca*,
480 U.S. 421 (1987) ..............................................................................20

*Kokesh v. SEC*,
581 U.S. 455 (2017) ..........................................................................31, 32

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ...........................................................28

*Loucks v. Standard Oil Co. of N.Y.*,
120 N.E. 198 (N.Y. 1918) ...................................................................30, 32

## <u>TABLE OF AUTHORITIES</u>
(Continued)

**Page(s)**

*Mark G. v. Sabol*,
  717 N.E.2d 1067 (N.Y. 1999) ................................................................................23

*Martinez v. City of St. Louis*,
  539 F.3d 857 (8th Cir. 2008) .................................................................................5

*May Dep't Stores v. Colorado*,
  863 P.2d 967 (Colo. 1993) ...................................................................................32

*McLaughlin v. Anderson*,
  962 F.2d 187 (2d Cir. 1992) .................................................................................29

*Milwaukee County v. M.E. White Co.*,
  296 U.S. 268 (1935) .............................................................................................31

*Moore v. Mitchell*,
  30 F.2d 600 (2d Cir. 1929) ...................................................................................31

*Navajo Nation v. Wells Fargo & Co.*,
  344 F. Supp. 3d 1292 (D.N.M. 2018) ..................................................10, 11, 13, 14

*Negrete v. Citibank, N.A.*,
  237 F. Supp. 3d 112 (S.D.N.Y. 2017) ...................................................................29

*Nevada v. Douglas Cty.*,
  524 P.2d 1271 (Nev. 1974) ...................................................................................25

*Nevada v. Moore*,
  207 P. 75 (Nev. 1922) ......................................................................................25, 26

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .............................................................................................10

*New York by James v. DailyPay, Inc.*,
  2025 WL 2695712 (S.D.N.Y. Sept. 19, 2025)...................................................24, 33

*New York by James v. Sirius XM Radio Inc.*,
  735 F. Supp. 3d 272 (S.D.N.Y. 2024)...............................................................24, 33

*Oklahoma v. Georgia-Pac. Corp.*,
  663 P.2d 718 (Okla. 1982) ...................................................................................26

*Pennsylvania by Shapiro v. Mariner Fin., LLC*,
  711 F. Supp. 3d 463 (E.D. Pa. 2024) ................................................................17, 21

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Pennsylvania v. Carsia*,
515 A.2d 956 (Pa. 1986)................................................................................................27

*Pennsylvania v. Think Fin., Inc.*,
2016 WL 183289 (E.D. Pa. Jan. 14, 2016)...................................................................27

*People v. Miner*,
2 Lans. 396, 1868 N.Y. App. Div. LEXIS 212 (1st Dep't 1868) ...............................22, 23

*Philips v. City of New York*,
2024 WL 4307923 (S.D.N.Y. Sept. 26, 2024)...............................................................3

*Printz v. United States*,
521 U.S. 898 (1997)......................................................................................................21

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..........................................................................................28

*Ryan v. Eighth Jud. Dist. Ct. In & For Clark Cty.*,
503 P.2d 842 (Nev. 1972).............................................................................................25

*Schaefer v. H.B. Green Transp. Line*,
232 F.2d 415 (7th Cir. 1956) .......................................................................................31

*In re Sharp's Est.*,
217 N.W.2d 258 (Wis. 1974).........................................................................................25

*N.Y. ex rel. Spitzer v. Grasso*,
42 A.D.3d 126 (N.Y. App. 2007) ...............................................................................22, 23

*State of New York v. Hendrickson Brothers, Inc.*,
840 F.2d 1065 (2d Cir. 1988)........................................................................................31

*State v. City of Oak Creek*,
605 N.W.2d 526 (2000) .................................................................................................25

*Switch, Ltd. v. Uptime Institute, LLC*,
426 F. Supp. 3d 636 (D. Nev. 2019).............................................................................28

*TAL Props. of Pomona, LLC v. Village of Pomona*,
2023 WL 2924571 (2d Cir. Apr. 13, 2023) ................................................................12

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..........................................................................................10, 12, 13

vi

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*TechnoMarine SA v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014).................................................................................10, 14

*State ex rel. Tenn. Gen. Assembly v. United States Dep't of State*,
   931 F.3d 499 (6th Cir. 2019) ........................................................................................21

*Thompson v. Cnty. of Franklin*,
   15 F.3d 245 (2d Cir. 1994)............................................................................................10

*U.S. Cap. Funding VI, Ltd v. Patterson Bankshares, Inc.*,
   137 F. Supp. 3d 1340 (S.D. Ga. 2015)...........................................................................5

*United States v. Federative Rep of Brazil*,
   748 F.3d 86 (2d Cir. 2014)............................................................................................30

*United States v. Harris*,
   838 F.3d 98 (2d Cir. 2016)............................................................................................18

*United States v. Rayonier*,
   627 F.2d 996 (9th Cir. 1980) ........................................................................................13

*Va. House of Delegates v. Bethune-Hill*,
   587 U.S. 658 (2019)................................................................................................21, 26

*In re Wells Fargo & Co. Sec. Litig.*,
   No. 1:20-cv-04494 (S.D.N.Y. 2020)..............................................................................14

*Williams v. Washington*,
   581 S.W.2d 494 (Tex. Civ. App. 1979) .........................................................................33

*Wisconsin v. Pelican Ins. Co.*,
   127 U.S. 265 (1888)......................................................................................................31

**Statutes and Constitutiona**

12 U.S.C. § 1818..................................................................................................5, 6, 8

12 U.S.C. § 5481.............................................................................................15, 16, 30

12 U.S.C. § 5497.........................................................................................................30

12 U.S.C. § 5536.........................................................................................................15

12 U.S.C. § 5552........................................................................................ *passim*

12 U.S.C. § 5564..................................................................................................20, 21

vii

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

12 U.S.C. § 5565.................................................................................................5, 24, 25, 30

15 U.S.C. § 15...............................................................................................................18, 19

15 U.S.C. § 1640.................................................................................................................16

28 U.S.C. § 1331.................................................................................................................33

28 U.S.C. § 1367.................................................................................................................34

28 U.S.C. § 1391......................................................................................................17, 20, 21

42 U.S.C. § 9613...................................................................................................................6

Clayton Antitrust Act
    15 U.S.C. §§ 12-27 (2018).........................................................................................18, 19

Consumer Financial Protection Act
    12 U.S.C. § 5481 *et seq.*.................................................................................... *passim*

Fair Credit Reporting Act
    15 U.S.C. § 1681.........................................................................................................16

Federal Trade Commission Act,
    15 U.S.C. §§ 41-58......................................................................................................24

Hart-Scott-Rodino Antitrust Improvements Act of 1976,
    Pub. L. No. 94-435, 90 Stat 1383 (1976)....................................................................18

Truth in Lending Act,
    15 U.S.C. § 1601, *et seq.*.............................................................................2, 15, 16, 17

Colo. Rev. Stat. § 5-9-3-108 ...............................................................................................29

Md. Code Ann., Com. Law § 13...................................................................................28, 32

Md. Com. Law Code § 14....................................................................................................22

N.J. Stat. § 56...............................................................................................................28, 32

N.Y. Exec. L. § 63 .......................................................................................................6, 24, 32

N.Y. Fin. L. § 4...................................................................................................................32

N.Y. Gen. Bus. L. § 348 .....................................................................................................24

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

N.Y. Gen. Bus. L. § 349 ................................................................24, 25

N.Y. Gen. Bus. L. § 350 ................................................................25, 32

Nev. Rev. Stat. § 598 ................................................................26, 28, 32

12 Okla. Stat. § 2................................................................................26

15 Okla. Stat. §§ 751 *et seq.* ..........................................................26

15 Okla. Stat. § 756................................................................................26

74 Okla. Stat. § 18................................................................................26

Pa. Const. Art. IV § 4.1................................................................27

71 Pa. Cons. Stat. § 733-506(B) ................................................22, 27

Washington Consumer Protection Act
    Wash. Rev. Code §§ 19.86.010-.920 ........................................33

Wis. Const. art. VI, § 3 ................................................................25

Wis. Stat. § 100................................................................................25

Wis. Stat. § 165................................................................................25

**Other Authorities**

156 Cong. Rec. S3868 (daily ed. May 18, 2010)................................19

156 Cong. Rec. S3869 (daily ed. May 18, 2010)................................20

90 Fed. Reg. 20,565, 20,566 (May 15, 2025) ................................16

CFPB, *Payments to harmed consumers by case*, https://tinyurl.com/4xb7sn6r ................30

Neal Devins & Saikrishna Bangalore Prakash, *Fifty States, Fifty Attorneys
    General, and Fifty Approaches to the Duty to Defend*, 124 Yale L.J. 2100
    (2015)................................................................................22

Fed. R. Civ. P. § 8................................................................................29

Fed. R. Civ. P. § 9................................................................27, 28, 29

Fed. R. Civ. P. § 12................................................................................30

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

Fed. R. Evid. 201 ..................................................................................................3

H.R. 4173, 111th Cong. (2010)..........................................................................19

N.Y. Senate, 248th Legis., 2025 S. 8416, Sponsors Memo. (June 14, 2025)..........................23, 24

Nat'l Ass'n of Att'ys Gen., *State Attorneys General Powers and Responsibilities*
    (4th ed. 2018) ................................................................................................22

Restatement (Second) of Judgments § 83 .............................................................10

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts*
    (2012).............................................................................................................18

## I.      INTRODUCTION

In 2023, the Consumer Financial Protection Bureau ("CFPB" or "Bureau") entered into a Consent Order with OneMain Financial to resolve the Bureau's allegations that certain of OneMain's consumer lending practices violated the federal Consumer Financial Protection Act ("CFPA"). Now, more than a dozen States have brought a sprawling suit seeking to relitigate those allegations, challenging practices expressly addressed by the CFPB Consent Order. And the States go further: they seek to hold OneMain liable for engaging in practices *demanded* by the CFPB and *compelled* by its Consent Order.

This endeavor is extraordinary—and perverse. OneMain cannot be subjected to liability for, on the one hand, complying with the Consent Order, as the States argue here; or, on the other, be required to violate that Order to satisfy the States' claims. Either result second-guesses, and undermines judgments by, the federal agency with principal authority to enforce the CFPA.

The States also seek to arrogate to themselves the CFPB's exclusive authority to bring nationwide CFPA claims in a single forum and to impose penalties under the CFPA. The claims should be dismissed, for multiple reasons.

*First*, this Court lacks the power to impose liability for OneMain's actions to implement the CFPB Consent Order: A party subject to a consent decree must comply with the terms of that decree—and may not be subjected to liability for doing so.

*Second*, although the CFPA authorizes States to bring claims for violations of the statute, to the extent the States here seek to relitigate claims already resolved by the CFPB—and their claims do precisely that—they are barred by *res judicata* and must be dismissed.

*Third*, the CFPA's plain language prohibits States from pursuing multistate enforcement actions. Unlike the CFPB, which is empowered to bring nationwide claims in a single forum, State

attorneys general ("AGs") may assert CFPA claims only in their home states. The CFPA claims asserted by States other than New York should therefore be dismissed for lack of venue.

*Fourth*, under Supreme Court doctrine, several States' CFPA claims—including New York's—must be dismissed for lack of standing because the AGs are not authorized by their state law to assert such claims.

*Fifth*, States may not bring Truth in Lending Act ("TILA") claims under the CFPA, as the CFPB itself has recognized—which the States attempt to do here.

*Sixth*, several state-law claims (in Counts 13-18) must be dismissed because they fail to satisfy elements of state law.

*Seventh*, all the States' requests for CFPA penalties should be stricken because States are not eligible to recover them, while six States' requests for state-law penalties should be stricken because those penalties may not be enforced outside their home jurisdictions.

*Finally*, because application of the above principles eliminates all federal-question claims, any remaining state-law claims must be dismissed for lack of subject matter jurisdiction.

## II.    FACTUAL BACKGROUND

Based in Evansville, Indiana since 1920, OneMain Financial (together with its affiliates, "OneMain") serves borrowers across the United States by providing access to affordable credit. *See* Compl. ¶¶ 59, 65-67. OneMain also offers customers other products—for example, credit unemployment insurance (which makes payments on the customer's loan in the event of a job loss) and guaranteed asset protection ("GAP") insurance (which pays an auto loan balance in the event of a total loss of the vehicle's value). *See id.* ¶¶ 65-67. Because customers may purchase these non-loan products in conjunction with a loan, they are referred to as "optional products" (or, in the Complaint's parlance, "add-on products").

In 2023, the CFPB brought an administrative enforcement action against OneMain. Compl. ¶ 186. Asserting claims under the CFPA, the CFPB alleged "unfair, deceptive, and abusive acts or practices" by OneMain relating to its optional-product sales practices, including that OneMain or its employees misrepresented that customers must purchase optional products to receive a loan; added products to a loan agreement without fully informing customers that those products were optional; and employed high-pressure sales tactics. *See* Ex. A, Consent Order ¶¶ 53-66.[1] OneMain disputed those allegations, but to best serve its customers and cooperate with regulators, it entered into a stipulation resolving the Bureau's claims.

OneMain agreed to pay $20 million in penalties and restitution for consumers nationwide, and to make sweeping changes in its practices that included enhanced disclosures, a 60-day full refund period with interest, improvements to policy and employee training to prevent improper sales practices, and ongoing CFPB compliance monitoring. Ex. A, Consent Order ¶¶ 74-124. To effectuate this agreement, OneMain implemented rigorous training and compliance practices, under close CFPB supervision, *Id.* ¶¶ 74-75, 93-99. OneMain continues to comply with the Consent Order and the Bureau has never alleged to the contrary.

Nearly three years later, thirteen State Plaintiffs, led by New York and Pennsylvania, now seek to enforce the same federal statute against OneMain for the same underlying conduct, at least partially during the same period, to benefit a subset of the same consumers. Based on those recycled allegations, the States assert eight claims under the CFPA (Counts 1-6, 14-15) and twelve tag-along state-law claims (Counts 7-13, 16-20), hoping to extract additional redress for their

---

[1] Because the Complaint refers to and relies on the CFPB Consent Order, *see, e.g.*, ¶¶ 186-200, the Order is "deemed part of the pleading[s] and may be considered" on a motion to dismiss. *Philips v. City of New York*, 2024 WL 4307923, at *2 (S.D.N.Y. Sept. 26, 2024) (Engelmayer, J.). "[W]hen considering a motion to dismiss, the Court may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201 … including … public records." *Id.*

already-compensated citizens; to re-penalize OneMain for already-adjudicated conduct; and to enjoin business practices required by the Consent Order.

### III.    ARGUMENT

This extraordinary suit is barred as a matter of both federal and state law. The States seek to relitigate CFPA claims already resolved by the CFPB, arguing that acts by OneMain that are mandated by the Consent Order violate the CFPA; long-settled federal law precludes such an action. The States want to bring a joint, multistate CFPA suit; federal law precludes that as well. And certain of the AGs seek to assert CFPA claims without authorization by their own States' laws; federal law says they lack standing to do that. The CFPA claims therefore should be dismissed, which will eliminate any federal question from the case and deprive this Court of subject matter jurisdiction over any remaining state-law claims. For the Court's convenience, the grounds for dismissal of the various claims are identified in an attached appendix.

### A.    The Court Lacks Jurisdiction Over Claims Based on OneMain's Acts Implementing the CFPB Consent Order.

The States' Complaint seeks to hold OneMain liable, and obtain injunctive relief, for numerous actions that OneMain took to implement the Consent Order. This Court lacks jurisdiction over those challenges, and the allegations based on them must be stricken and the claims based on them dismissed.

The Supreme Court has long recognized that parties may not be required to depart from the terms of a valid consent order. "[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 386 (1980). A party subject to a consent decree consequently must follow the requirements of that order and may not be penalized for doing so. *See, e.g.*, *Martinez v. City of St.*

4

*Louis*, 539 F.3d 857, 861 (8th Cir. 2008) (concluding that "compliance with [a] valid Title VII remedial consent decree until it was dissolved … is a complete defense to the pre-dissolution claims for damages and other individualized relief"); *see also Cato Inst. v. Sec. & Exch. Comm'n*, 4 F.4th 91, 95 (D.C. Cir. 2021) (SEC consent decrees must be followed until modified or reversed).

For CFPB orders like the Consent Order at issue here, this general rule is reinforced by statutory limits on courts' jurisdiction to review or modify the order. The CFPB issued the Consent Order pursuant to its jurisdiction under 12 U.S.C. § 5565(a)(1), and the Bureau may enforce the order in federal court, *id.* § 5563(d)(1). The CFPA states that, "[e]xcept as otherwise provided" in this enforcement provision, no court shall have jurisdiction to "affect by injunction or otherwise the issuance or enforcement of any notice or order or to review, modify, suspend, terminate, or set aside any such notice or order." *Id.* § 5563(d)(2).

This language is modeled on identical language in 12 U.S.C. § 1818(i)(1), governing orders issued by federal banking agencies. Construing that identical language, "[s]everal courts have found that [it] precludes subject-matter jurisdiction where the plaintiff seeks relief for the defendant's improper practices that are *the very conduct giving rise to, and resolved by, the federal … agency's consent order*." *U.S. Cap. Funding VI, Ltd v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1360 (S.D. Ga. 2015) (emphasis added).

In *Bakenie v. JPMorgan Chase Bank, N.A.*, 2012 WL 4125890, at *3 (C.D. Cal. Aug. 6, 2012), for example, the court concluded that it lacked jurisdiction over a claim challenging "improper notarial practices," where the Office of the Comptroller of Currency had "addressed all of these improper practices in the Consent Order" and "established a detailed plan for correcting the improper practices." *Id.* In *American Fair Credit Ass'n v. United Credit National Bank*, 132 F. Supp. 2d 1304 (D. Colo. 2001), the court similarly concluded it lacked jurisdiction over claims

seeking to require payment to the plaintiff where that was "in direct contravention" of a consent order barring such payment. *Id.* at 1312; *see also*, *e.g.*, *Camillus Clean Air Coal. v. Honeywell Int'l, Inc.*, 947 F. Supp. 2d 208, 211 (N.D.N.Y. 2013) (court lacked subject matter jurisdiction under 42 U.S.C. § 9613(h), which is similar to § 1818(i)(1), to enjoin action required by defendant's consent order with EPA).

This principle bars the bulk of the States' claims in this case. *First*, the States challenge throughout the Complaint what they term a "bait and switch"—that OneMain advertises its loan products to customers without providing information about the additional optional products that OneMain offers, and provides information regarding those products only after a customer's loan has been approved. *See, e.g.*, Compl., ¶¶ 74-88; *see also id.* ¶¶ 137-43 (asserting that OneMain "hides the terms and conditions of the add-on products until the end of the closing process") (capitalization omitted)). Those assertions underlie the first four CFPA claims in the Complaint and are cross-referenced in various of the Complaint's state-law claims as well. *See id.* ¶ 286 (claiming OneMain's "bait and switch of packing add-ons" represents a "deceptive . . . act or practice" under the CFPA); *id.* ¶ 295 ("pack[ing] the add-on products through a process that cloaks the charges in a quick closing" is an "unfair" practice under the CFPA); *id.* ¶ 301-03 (OneMain's "wall[ing] consumers off from information about add-ons until closing" is "abusive" under the CFPA); *id.* ¶ 310 (same with respect to claim that OneMain "conceal[s] the existence of add-on products until closing"); *see also, e.g.*, *id.* ¶ 337 (asserting preceding allegations established fraud in selling add-on products in violation of New York Executive Law § 63(12)).

But this precise sequencing—providing information about optional products only after a loan has been approved—is *required* by the Consent Order, which expressly prohibits OneMain from "selling an Optional Add-On Product without first providing the consumer a written loan

6

offer in a paper or electronic form that the consumer can keep and that does not include any Optional Add-On Products." Consent Order, ¶ 73(c). OneMain implemented that requirement via a "comprehensive compliance plan designed to ensure that [OneMain's] marketing, selling, and financing of Optional Add-On Products complies with" the Consent Order and "all applicable laws that the [CFPB] enforces," which OneMain was required to submit to the CFPB for a determination of non-objection. *Id.* ¶ 93.

When the Complaint challenges and seeks to enjoin, for example, OneMain's "policy prohibit[ing] its employees from discussing add-on products at first," Compl. ¶ 85, it challenges an action OneMain is required to take by the Consent Order, subject to review and oversight by the CFPB. This Court lacks jurisdiction over claims seeking to force OneMain to act "in direct contravention" of the Consent Order. *American Fair Credit Ass'n*, 132 F. Supp. 2d at 1312.

*Second*, the Complaint faults OneMain's disclosures to customers regarding optional products they have purchased, because OneMain provides those disclosures through a post-closing disclosure form and phone calls. *See* Compl. ¶¶ 195-99; *see also id.* ¶ 162. And it asserts that OneMain did not sufficiently inform consumers that they would be charged interest on the amount borrowed to pay for optional products. *Id.* ¶¶ 156-62.

Here, too, the challenged disclosure policies are mandated by the Consent Order, as the Complaint itself reflects. *See id.* ¶ 194. The Consent Order specifies numerous "enhanced disclosures" that OneMain is required to provide, including the anticipated total cost including interest of the optional products and a "[c]lear and prominent explanation that the Customer is financing the cost" of the optional product. Consent Order ¶ 76. It also includes requirements regarding the form the disclosures must take (both a letter or email and a recorded phone call), their timing, and the number of attempts to reach customers by phone that must be made. *Id.* ¶¶ 77-

78. And it requires OneMain to send customers recurring reminders that they purchased an optional product whose cost could be refunded. *Id.* ¶ 79. Again, OneMain was required to implement these provisions through a compliance plan submitted to the CFPB for review. *See id.* ¶ 93. The States' efforts to impose liability based on these required steps are therefore barred.

*Third*, the Complaint challenges the manner in which OneMain makes customers aware that they may cancel their purchase of optional products and OneMain's procedure for processing cancellation requests. Compl. ¶¶ 98-102. But the Consent Order contains requirements specifying how OneMain must inform customers of their cancellation rights and must process cancellations. *See* Consent Order, ¶¶ 76(e)-(f), 87-92. These provisions, too, were subject to the requirement that OneMain implement them through a compliance plan submitted to the CFPB within 45 days of the Consent Order's effective date. *Id.* ¶ 93. The Complaint thus again challenges as unlawful OneMain's implementation of the Consent Order's requirements. *See* Compl. ¶ 103 (faulting OneMain for implementing changes to cancellation process "[o]nly in March 2024"). And here, too, the Court lacks jurisdiction over this challenge. *See Bakenie*, 2012 WL 4125890, at *3 (barring suit based on defendant's policies addressed in consent order and detailed implementation plan would "affect . . . enforcement of [the Consent Order]" (brackets in original) (quoting 12 U.S.C. § 1818(i)(1))).

*Finally*, there is a compelling reason to reject the AGs' demand for a do-over of the CFPB's resolution of its claims. Their action undermines the CFPB's regulatory role and is fundamentally unfair to OneMain, placing it in the untenable position of complying with either the requirements of the Consent Order or the demands of the States. It also would undermine the CFPB's ability to obtain consent orders, as any agreement would both leave signatories open to state suits

challenging the same conduct and expose them to liability for the very practices they agreed to undertake. In such a situation, the dictates of the Consent Order must prevail.

This Court should therefore strike the portions of the Complaint challenging the foregoing actions that OneMain was required to take under the Consent Order. The corresponding claims (under Counts 1-4, 7-10, 12, 16-20) should be dismissed:

| Allegation | 2023 CFPB Consent Order | 2026 Multistate Complaint |
|---|---|---|
| **Claimed "Bait and Switch" / Optional Product Disclosure**<br><br>Advertising loan products to customers without providing information about the additional optional products; providing information regarding those products only after a customer's loan has been approved. | ¶¶ 73, 93 | ¶¶ 7, 74-88, 137-43, 284-87, 295, 303, 309-10, 336, 342-44, 354, 411, 433 |
| **Post-Closing Disclosure Process**<br><br>Post-closing disclosure does not "mitigate the harm of the add-on packing and the misleading closing process"; fails to sufficiently inform customers of interest on amount borrowed to pay for optional products. | ¶¶ 76-79, 93 | ¶¶ 92, 156-62, 194-99 |
| **Cancellation Procedure**<br><br>OneMain leaves customers unaware of their right to cancel optional products and impedes customers' cancellation efforts. | ¶¶ 76(e)-(f), 87-93 | ¶¶ 98-103, 355, 360 |

**B.    *Res Judicata* Bars CFPA Claims for Conduct Pre-Dating the Consent Order (Counts 1-6, 14-15).**

The Complaint's claims also fail for a related but independent reason. By challenging actions OneMain was required to take under the Consent Order, the States' claims duplicate those the CFPB brought or could have brought in connection with the Order. This attempted relitigation of claims already resolved by the Consent Order is barred by *res judicata*.

It is fundamental that a final judgment in one action is binding and "forecloses 'successive litigation of the very same claim.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). This rule "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

A successive claim is precluded when "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (cleaned up). All three elements are met here. The Consent Decree was a merits disposition; the States are fairly deemed to stand in the CFPB's shoes; and the claims advanced here were in fact advanced in the prior suit. Thus, to the extent Counts 1-6 and 14-15 address conduct occurring on or before the effective date of the Consent Order, they should be dismissed as barred by *res judicata*.[2]

### 1.    The Complaint Relitigates Claims that Were Brought or Could Have Been Brought in a Prior Enforcement Action.

The first and third of the *res judicata* requirements are easily satisfied. "The general rule is that a final consent decree is entitled to res judicata effect," *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987), including when issued by an administrative agency, *see B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015); *CFPB v. TransUnion*, 641 F. Supp. 3d 474, 484 (N.D. Ill. 2022); *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292, 1303-04 (D.N.M. 2018); Restatement (Second) of Judgments § 83(1).

---

[2] A *res judicata* defense is properly raised on a motion to dismiss. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

The CFPB's Consent Order against OneMain—which tracks the relevant language in the *TransUnion* and *Wells Fargo* consent orders,[3] cited above—is such a disposition. It is a "fully enforceable" "final order" that "resolves" OneMain's "potential liability for law violations that the Bureau asserted or might have asserted based on the practices described" therein, and it expressly released OneMain from "all potential liability for law violations that the Bureau asserted or might have asserted" for those practices that "occurred before" May 31, 2023. Ex. B, Stipulation ¶¶ 3, 5; Ex. A, Consent Order ¶¶ 132-33.

There can be no doubt about the overlap between the Consent Order and the current claims: the Complaint quotes or paraphrases passages from the Consent Order as the basis for its own allegations. Compl. ¶¶ 187-91, 206; *see id.* ¶¶ 103, 162, 186, 192-94. The States complain that the Consent Order did not go far enough, *e.g.*, Compl. ¶¶ 195, 198, but they cannot deny that their claims are identical to allegations that the CFPB "has or might have asserted based on the practices described in [the] Consent Order, to the extent such practices occurred before [May 31, 2023] and the Bureau kn[ew] about them" at the time, Ex. A, Consent Order ¶ 132; *see* Ex. B, Stipulation ¶ 5. The table below reflects the duplicative allegations:

| Allegation | 2023 CFPB Consent Order | 2026 Multistate Complaint |
|---|---|---|
| "Pre-packing" optional products into loans without customer knowledge or consent | ¶¶ 30, 64, 68 | ¶¶ 82-84, 89-97, 284, 294-95 |
| Misrepresenting that optional products are required to receive a loan | ¶¶ 53-60 | ¶¶ 89-97, 163, 284 |
| Engaging in high-pressure sales tactics | ¶¶ 44, 48, 62 | ¶¶ 13, 93, 134-35 |

---

[3] Ex. C, TransUnion Consent Order ¶¶ 130-32 (Oct. 12, 2023); Ex. D, Wells Fargo Consent Order ¶¶ 87-89 (Dec. 20, 2022).

| Rushing through or speeding through written disclosures | ¶¶ 62-63 | ¶¶ 11, 104-12, 131-33 |
|---|---|---|
| Oral representations contradicting or obscuring written disclosures | ¶¶ 32, 63 | ¶¶ 14, 121 |
| Employee compensation tied to optional product sales | ¶¶ 28-29 | ¶¶ 17, 201-10 |
| Failure to disclose interest cost of optional products | ¶¶ 42-46 | ¶¶ 91-92, 194-99 |
| Impeding or discouraging product cancellations | ¶ 30 | ¶¶ 100-03 |

The States may be dissatisfied with the Consent Order, but "a party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks omitted). Insofar as the States' CFPA claims are directed to conduct pre-dating May 31, 2023, the Consent Order forecloses "successive litigation of the very same claim." *Taylor*, 553 U.S. at 892.

### 2.    The States Stand in the CFPB's Shoes Regarding the CFPA Claims.

As for the remaining *res judicata* element, a prior judgment may bind a nonparty to the prior action if the nonparty was "adequately represented by someone with the same interests who was a party" to the first action or when the second litigant proceeds as a "proxy" or "litigating agent" for the first. *Taylor*, 553 U.S. at 894-95, 906 (citation omitted). In the Second Circuit, "literal privity is not a requirement for *res judicata* to apply." *TAL Props. of Pomona, LLC v. Village of Pomona*, 2023 WL 2924571, at *3 (2d Cir. Apr. 13, 2023) (cleaned up). Instead, privity concepts are "to be applied with flexibility" and may be established where "the relationship between the parties" is "sufficiently close" to support preclusion. *Amalgamated Sugar*, 825 F.2d at 640; *see Taylor*, 553 U.S. at 894 n.8.

Here, the States were "adequately represented" by the CFPB in the 2023 enforcement action. Under *Taylor*, a party's (the CFPB) representation of a nonparty (the States) is "adequate"

12

for preclusion purposes if "(1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." 553 U.S. at 900. Both conditions are satisfied here: the CFPB's enforcement interests are aligned with those of the States (they represent the same consumers), and "the CFPB[] understood itself to be acting as a representative of all consumers … when it took enforcement action" that culminated in the Consent Order. *Navajo Nation*, 344 F. Supp. 3d at 1307-08; *see, e.g.*, Ex. A, Consent Order ¶¶ 100-05 ("Order to Pay Redress" to "Affected Customers").

Where parallel government enforcers (here, the CFPB and state AGs), representing the same citizens, serially attempt to apply the same statute to the same conduct, *res judicata* attaches. One court has considered this precise fact pattern and, concluding that the Navajo Nation (a "State" for CFPA purposes) was "adequately represented" during an earlier CFPB consent-order proceeding, dismissed the Nation's subsequent claims under *res judicata*. *Navajo Nation*, 344 F. Supp. 3d. at 1307-08. Courts have reached the same result under analogous shared state-federal enforcement regimes. *E.g.*, *United States v. Rayonier*, 627 F.2d 996, 1003 (9th Cir. 1980) ("interests of [Washington State's Department of Ecology] and the [federal] EPA were identical and their involvement [in enforcement] sufficiently similar" to establish privity for *res judicata* purposes); *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999) ("the State of Missouri advanced the exact same legal right under the statute as the EPA did in its administrative action. Accordingly, the identity of the parties requirement [for *res judicata*] is satisfied").

### 3.    The Consent Order Contemplated Preclusion of CFPA Claims.

It is no answer, as the States might suggest, that the Consent Order "do[es] not bar, estop, or otherwise prevent" another "governmental agency from taking any action" against OneMain. Ex. A, Consent Order ¶ 131. The Order explicitly makes that reservation subject to the immediately

following release "described in Paragraph 132," which resolves "*all potential liability for law violations that the Bureau has or might have asserted* based on the practices described in" the Consent Order. *Id.* ¶¶ 131-32 (emphasis added); Ex. B, Stipulation ¶ 5.

Read together, these terms establish that other litigants asserting *different* claims are not precluded by the Consent Order. By expressly excluding from the provision barring estoppel the Consent Order's resolution of "potential liability" for all violations of the CFPA that the CFPB "has or might have asserted," the Consent Order confirms the scope of *res judicata*: Claims are precluded to the extent, but *only* to the extent, that they "were, or could have been, raised in the prior action." *TechnoMarine*, 758 F.3d at 499. Here, because the Consent Order does resolve all CFPA claims that the Bureau "has or might have asserted based on" OneMain's optional products practices, Consent Order ¶¶ 131-32, the Order necessarily precludes the CFPA claims based on OneMain's optional products practices that the States now seek to advance.

That is confirmed by the *Navajo Nations* court's treatment of the CFPB's consent order with Wells Fargo, which it held to preclude future *CFPA* claims brought by the Navajo Nation for the same conduct, 344 F. Supp. 3d at 1307-08, but *not* to foreclose later class-action *securities litigation* by private litigants that addressed different conduct of Wells Fargo. *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494 (S.D.N.Y. 2020). Likewise, *res judicata* did not preclude state- and tribal-law claims against Wells Fargo (although those claims were dismissed from federal court for lack of subject matter jurisdiction). *Navajo Nation*, 344 F. Supp. 3d at 1313-14.

Thus, to the extent the States' CFPA claims (Counts 1-6 and 14-15) are directed to conduct occurring on or before May 31, 2023, they are barred by *res judicata*.

14

**C.      Counts 5 and 6 of the Complaint Should Be Dismissed Because the States Have No Authority to Enforce the Truth in Lending Act.**

Certain federal claims asserted by the States also are substantively defective. In particular, the States claim broad authority under 12 U.S.C. § 5536(a)(1)(A) to enforce federal consumer financial laws other than the CFPA, including the TILA. Compl. ¶ 26 (seeking relief "for Defendant's acts or practices that violate *other Federal consumer financial laws set forth in the CFPA, including the Truth in Lending Act*, 15 U.S.C. § 1601, *et seq.* (TILA).") (emphasis added). They are wrong about what section 5536(a)(1)(A) authorizes.

Section 5536(a)(1)(A) grants *no* enforcement authority to the States. Rather, it simply defines certain "Prohibited Acts" to include "any covered person or service provider" "offer[ing] or provid[ing] to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit[ting] any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a). The provision neither creates a cause of action to enforce those other laws nor expands the list of entities authorized to enforce them.

State CFPA enforcement authority is instead found in section 5552, which provides that a State "may bring a civil action . . . to enforce provisions of this title [that is, Title X of the Dodd-Frank Act, the CFPA] or regulations issued under this title," *see* 12 U.S.C. § 5552(a)(1). By this provision's express terms, the States' enforcement authority extends *only* to allegations under "this title," not to all "Federal consumer financial law[s]" that are enumerated in and predated the CFPA, like the TILA. *See* 12 U.S.C. § 5481(12), (14) (listing "this title" as a subset of "Federal consumer financial law").

Indeed, the CFPB has recognized as much, rescinding an earlier interpretive rule that had construed 12 U.S.C. § 5536(a) inconsistently with its plain terms and stating that this provision is instead best read to limit States "to enforc[ing] title X of Dodd-Frank (i.e., the CFPA) and the

regulations issued pursuant thereto." *Authority of States To Enforce the Consumer Financial Protection Act of 2010; Rescission*, 90 Fed. Reg. 20,565, 20,566 (May 15, 2025). As the CFPB explained, "[i]f Congress had intended the CFPA to permit States to enforce any provision of any [other] Federal consumer financial law, it would have said so explicitly." *Id.*

Instead, the CFPA left the States' authority to enforce other Federal consumer financial laws as it was. The CFPA separately defines the term "enumerated consumer laws" by reference to eighteen pre-existing federal statutes, including the TILA. 12 U.S.C. § 5481(12)(O). Some of the "enumerated consumer laws" do separately provide for State enforcement. *See, e.g.*, 15 U.S.C. § 1681s(c)(1) (Fair Credit Reporting Act).

The CFPA did not displace limits on that pre-existing authority. The "Rule of Construction" in Section 5552, the provision granting enforcement authority to the States, provides: "No provision" of the CFPA "shall be construed as modifying, limiting, or superseding the operation of any provision of an enumerated consumer law that relates to the authority of a State attorney general or State regulator to enforce such Federal law." 12 U.S.C. § 5552(a)(3). But construing Section 5552 to give the States blanket authority to enforce every federal consumer law *would* "modify[]" and "supersed[e]" the provisions of those laws "relat[ing] to" state enforcement authority. The Rule of Construction expressly bars that interpretation.

The CFPA therefore does not give any State the authority to enforce an enumerated consumer law the State did not already have before the CFPA—and crucially, insofar as is relevant here, the TILA does *not* give the States enforcement authority. (TILA gives the States limited authority, but not in substantive areas applicable to the States' claims here. *See* 15 U.S.C. § 1640(e) (identifying the limited areas, involving mortgage loans, where States have TILA enforcement

16

authority)). Because the States have no authority under the CFPA to enforce the federal TILA provisions upon which they rely, Counts 5 and 6 must be dismissed.[4]

    **D.    States Other Than New York Cannot Establish Venue in This Court for Their CFPA Claims (Counts 1-6, 14-15).**

The CFPA authorizes a state AG to "bring a civil action in the name of such State in any district court of the United States *in that State* or in State court that is located *in that State* and that has jurisdiction over the defendant." 12 U.S.C. § 5552(a)(1) (emphases added). Nothing in the CFPA authorizes a State AG to bring claims in a federal or state court outside their home state. This means that only the New York AG may bring claims in a court in New York. The claims of the remaining twelve plaintiff States should be dismissed for lack of venue.

The Complaint ignores the venue limitation in the CFPA and instead cites the broader federal venue statute, 28 U.S.C. § 1391(b). Compl. ¶ 45. Presumably, the States intend to argue that the CFPA venue provision supplements but does not displace the general venue statute and, because OneMain resides in New York, every State AG may invoke the general venue statute to lay venue in New York for their CFPA claims. That argument is wrong.

Whether a special venue provision like the CFPA's supplements or displaces the general civil venue statute is a question of congressional intent. *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198-99 (2000); *id.* at 204 (explaining that "analysis of special venue provisions must be specific to the statute" and citing examples of restrictive special venue

---

[4] We note that the court rejected this view in *Pennsylvania by Shapiro v. Mariner Fin., LLC*, 711 F. Supp. 3d 463, 482-84 (E.D. Pa. 2024), holding that States may enforce TILA under the CFPA. Respectfully, that holding was incorrect: it did not address the CFPB's contrary conclusion and illogically read the CFPA's rule of construction as a one-way ratchet that does modify state authority, but only when doing so would increase state enforcement powers.

provisions). Here, the statutory text, legislative history, and common sense all show that Congress intended 12 U.S.C. § 5552(a)(1) to restrict state AGs' venue opportunities.

The States proceed under the cause of action provided by 12 U.S.C. § 5552(a)(1). That provision authorizes a State to bring a civil action and also specifies the venue where suit may be brought. The Complaint ignores this limiting language, highlighted in red below:

> Except as provided in paragraph (2), the attorney general (or the equivalent thereof) of any State may bring a civil action in the name of such State in any district court of the United States in that State or in State court that is located in that State and that has jurisdiction over the defendant, to enforce provisions of this title ….

12 U.S.C. § 5552(a)(1) (color representation added). Yet reading this key text out of the provision violates a cardinal rule of interpretation: "courts must give effect to all of a statute's provisions so that no part will be inoperative or superfluous, void or insignificant." *United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) (internal quotation marks omitted); *see* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 112, 174 (2012).

Indeed, when Congress intends to create a federal right of action *and* facilitate multistate AG enforcement actions, it speaks clearly. It did so, for example, in the Clayton Antitrust Act, which provides that "[a]ny attorney general of a State may bring a civil action … *in any district court of the United States having jurisdiction of the defendant*." 15 U.S.C. § 15c(a)(1) (emphasis added); Pub. L. No. 94-435 (H.R. 8532), 90 Stat 1383 (1976).

The CFPA's language and history contrast starkly, and intentionally, with that provision. When an early version of the CFPA first passed the House in 2009, its State-AG enforcement provision would have matched that of the Clayton Act almost word for word:

18

| Clayton Antitrust Act 15 U.S.C. § 15c(a)(1) | "Any attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States having jurisdiction of the defendant …. " |
|---|---|
| House Version of CFPA H.R. 4173, 111th Cong. § 4402(a)(1) (as referred to Senate)[5] | "Any State attorney general may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States or State court having jurisdiction of the defendant …. " |

But the House version, the language of which also appeared in the original version of the Senate bill (*see* S. 3217, 111th Cong. § 1042(a)(1) (Apr. 29, 2010)), caused a backlash in the Senate. Senator Bob Corker lamented that, if the proposed State AG enforcement provision were passed, "there are 50 State AGs around the country who … are going to be turned loose on our community banks." Ex. E, 156 Cong. Rec. S3868 (daily ed. May 18, 2010) ("I think this is one of the worst attributes of this bill.").

To address that concern, paired with a related concern about the substantive scope of the State AGs' potential enforcement portfolio, Senator Tom Carper offered an amendment limiting State AG actions to courts in their own States, explaining:

> *Can they [state AGs] go across State lines? Can the attorney general from Alabama go into Florida and try to enforce the rules across State lines? The AGs can't do that.* But what they can do under our compromise is, the State AGs in all 50 States can look at the rules and regulations promulgated by the consumer bureau and *enforce those in their own State.*

*Id.* at S3869 (emphases added); *see* Ex. F, S. Amend. 4071, 111th Cong. (May 18, 2010) (the "Carper Amendment"). According to Senator Carper, keeping State AGs within their own state

---

[5]  H.R. 4173, 111th Cong. § 4402(a)(1), https://www.congress.gov/bill/111th-congress/house-bill/4173/text (select version from drop down menu).

borders was the most significant element of his proposed amendment. Ex. E, 156 Cong. Rec. S3869 ("[T]hat is probably the *biggest give* with respect to what we introduced last week." (emphasis added)). Senator Christopher Dodd and others praised their colleagues for finding "common ground on a very difficult issue." *Id.* at S3870. The Carper Amendment passed, 80 votes to 18, *id.* at S3872, and ultimately was enacted as 12 U.S.C. § 5552.

This change from the broader House version to the narrower Senate one is dispositive: "Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 442-43 (1987); *Bustamante v. Napolitano*, 582 F.3d 403, 407 & n.4 (2d Cir. 2009). And "where Congress has dealt with a particular venue problem"—here, potential over-enforcement by State AGs—"broader language in a general venue statute [28 U.S.C. § 1391(b)] will not overcome this even though literally applicable." *Bruns, Nordeman & Co. v. Am. Nat. Bank & Tr. Co.*, 394 F.2d 300, 303 (2d Cir. 1968).

Congress confirmed its restrictive intent by passing another, broader venue provision in the same enactment—not for State AGs, but for the CFPB. The CFPB, but not State AGs, may assert CFPA claims "in a United States district court … in a district in which the defendant is located or resides or is doing business." 12 U.S.C. § 5564(f).

| CFPA (when enforced by the CFPB) 12 U.S.C. § 5564(f) | "Any civil action … may be brought in a United States district court or in any court of competent jurisdiction of a state in a district in which the defendant is located or resides or is doing business …. " |
|---|---|
| CFPA (when enforced by State AGs) 12 U.S.C. § 5552(a)(1) | "[T]he attorney general [] of any State may bring a civil action in the name of such State in any district court of the United States *in that State* or in State court that is located in that State and that has jurisdiction over the defendant …. " |

20

When Congress "uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Cruz-Miguel v. Holder*, 650 F.3d 189, 196 (2d Cir. 2011) (citation omitted). Had Congress intended to give States the same broad venue options as the CFPB, it would have used the same language in both provisions. But it did not.[6]

The CFPA claims asserted by States other than New York should be dismissed (Counts 1-6, 14, and 15).[7]

### E.        At Least Five States Lack Standing to Assert CFPA Claims (Counts 1-6).

Several States, including New York, may not proceed for the additional and independent reason that they lack standing. Although Congress created a right of action in the CFPA that may be invoked by state AGs, 12 U.S.C. § 5552(a)(1), an AG has standing actually to pursue such an action only if he or she has "a[] legal basis for [their] claimed authority to litigate on the State's behalf." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). That authority must be provided, not by Congress, but by the State under its own law. *See id*. at 663-66; *State ex rel. Tenn. Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 515 (6th Cir. 2019) (citing cases); *see also Printz v. United States*, 521 U.S. 898, 912 (1997) ("[S]tate legislatures are not subject to federal direction.").

---

[6] It is telling that, in addition to the general civil venue statute, 28 U.S.C. § 1391(b), the States in their Complaint cite *the CFPB's* venue provision, 12 U.S.C. § 5564(f), rather than their own, 12 U.S.C. § 5552(a)(1). Compl. ¶ 45; *Benton v. Bank of Am. Corp.*, 159 F. Supp. 3d 89, 92 (D.D.C. 2016) (12 U.S.C. § 5564 "speaks only to suits brought by the Consumer Financial Protection Bureau"). Section 5564(f) appears in Part E, titled "Enforcement Powers," of Subchapter V, titled "Bureau of Consumer Financial Protection," of the CFPA as codified.

[7] The *Mariner Financial* court rejected the contention that the CFPA venue provision is restrictive. 711 F. Supp. 3d at 476-83. But in doing so, that court both entirely disregarded the compelling evidence of legislative intent described above and did not explain how its interpretation, which rendered meaningless the venue provision's restrictive language, could be reconciled with the principle that statutes should be interpreted so their provisions are not superfluous.

Whether a State has done so "requires analysis of the relevant state provisions." *Commonwealth of Pa. v. Mid-Atl. Toyota Distribs., Inc.*, 704 F.2d 125, 129-30 & n.9 (4th Cir. 1983); *see* Neal Devins & Saikrishna Bangalore Prakash, *Fifty States, Fifty Attorneys General, and Fifty Approaches to the Duty to Defend*, 124 Yale L.J. 2100, 2107, 2120 (2015) (attorneys general authorities "arise almost entirely from state law, and federal law plays but a minimal role."); Nat'l Ass'n of Att'ys Gen., *State Attorneys General Powers and Responsibilities* 31 (4th ed. 2018) (there is an "astonishing array of mutations [of the powers of a State AG] which make it altogether impossible to reach any sweeping generalization on the matter").

Here, New York, Wisconsin, Nevada, Oklahoma, and Pennsylvania have not given their AGs authority to assert CFPA claims; their claims should be dismissed from Counts 1-6.

### 1.    New York

Unlike in some other states, *e.g.*, 71 Pa. Cons. Stat. § 733-506(B); Md. Com. Law Code § 14-4103, no New York statute expressly authorizes the AG to enforce the CFPA; if New York's AG has authority to enforce the CFPA directly, it must be drawn from the powers "belonging to [her] office at common law." *N.Y. ex rel. Spitzer v. Grasso*, 42 A.D.3d 126, 136 (N.Y. App. 2007), *aff'd*, 893 N.E.2d 105 (N.Y. 2008) (citing *People v. Miner*, 2 Lans. 396, 399, 1868 N.Y. App. Div. LEXIS 212, at *6 (1st Dep't 1868)). There is no such common law authority.

*First*, although New York's AG possesses some common law powers, she is not endowed with the broad "public interest" litigation authority held by some of her peers. Rather, the AG may bring suit only if her office "enjoyed common-law authority to bring causes of action comparable to the … causes of action" she purports to assert in a given case. *Grasso*, 42 A.D.3d at 135, 136 n.5; *see id.* at 140 (no authority to assert nonstatutory cause of action despite the "considerable public importance" of the subject matter). That rule dates at least to 1868, when, in *People v. Miner*, New York's Appellate Division enumerated a set of nine discrete "common law" powers

belonging to the AG—none resembling the authority asserted here—and concluded it was "utterly opposed to the adoption of a rule that will permit a State officer to intermeddle in the affairs of every corporation in the State." 2 Lans. at 398-99, 411; *see Mid-Atl. Toyota*, 704 F.2d at 129 & nn.7-8 (statutory right of action in which "the state sues on behalf of injured natural residents" is "more expansive" than an AG's common law *parens patriae* authority).

New York's AG could not at common law enforce the CFPA, or anything like it, on consumers' behalf. That should end the inquiry.

*Second*, even assuming New York's AG possesses a broad background power to press affirmative claims in the name of the "public interest," that power nevertheless is curtailed when the legislature enacts a "comprehensive … enforcement scheme" that "gives no hint of authority inhering in the Attorney General to bring causes of action other than those it authorizes the Attorney General to bring." *Grasso*, 42 A.D.3d at 137-38, 139 (quoting *Mark G. v. Sabol*, 717 N.E.2d 1067, 1070, 1071 (N.Y. 1999)); *see Council for Owner Occupied Hous., Inc. v. Abrams*, 125 A.D.2d 10, 13-14 (3d Dep't1987). "[T]he authority to bring suit in what the Attorney General perceives to be the interest of the state cannot trump contrary determinations about the public interest made by the Legislature." *Grasso*, 42 A.D.3d at 142.

The New York legislature has limited the AG's consumer-protection enforcement powers in precisely that way. Just months ago, in direct response to the perceived "dismantlement [of the] Consumer Financial Protection Bureau," Ex. G, N.Y. Senate, 248th Legis., 2025 S. 8416, Sponsors Memo. 1-2 (June 14, 2025) (Sen. Comrie), New York's legislature overhauled its preexisting consumer protection statute—which had prohibited only "deceptive" business acts and practices— and "adopt[ed] a *comprehensive* unfair, deceptive, and abusive business acts and practices statute" in its place, N.Y. Gen. Bus. L. § 348, S. 8416, 2025 Sess. Law News of N.Y. Ch. 708 (McKinney)

(enacted Dec. 19, 2025; effective Feb. 17, 2026) (emphasis added). The legislature entitled this "comprehensive" expansion the "FAIR Business Practices Act," explicitly designed it to track the standards of the federal FTC Act ("unfair") and CFPA ("abusive"), and "updat[ed] the Attorney General's powers to enforce *New York's consumer protection laws* by adding federal authorities that are presently at risk of falling into desuetude." Ex. G, 2025 S. 8416 Sponsors Memo. 1 (emphasis added). Nowhere in that enactment did the legislature suggest that the AG also was authorized to enforce the federal CFPA.

Instead, the AG's power to challenge unfair, deceptive, and abusive business practices is tied to provisions of *New York law*, even if the state-law provisions resemble or incorporate federal standards. As New York's AG has urged successfully in this Court, "a state-law claim that looks to federal law for liability remains a state-law claim." *New York by James v. DailyPay, Inc.*, 2025 WL 2695712, at *4 (S.D.N.Y. Sept. 19, 2025) (collecting cases); *see New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 281 (S.D.N.Y. 2024). New York's AG simply does not have the power to enforce the CFPA directly.

The New York legislature's decision—to grant the AG state-law enforcement power but withhold federal-law enforcement power—is significant. The procedures and remedies available to a CFPA plaintiff are different, *and broader*, than what is available to New York's AG under state law. For example, New York law allows damages, restitution, and injunctive relief, while the CFPA permits all those remedies *plus* the "rescission or reformation of contracts," "refund of moneys," and "disgorgement." *Compare* N.Y. Gen. Bus. L. §§ 349-c, 350-d *and* N.Y. Exec. L. § 63(12), *with* 12 U.S.C. § 5565(a)(2); *see* Compl. 71 ¶ 291; *id.* 98-99 ¶¶ H, I, L, N (seeking disgorgement, rescission or reformation, and forfeiture of beneficial interests and security interests in outstanding loans). Similarly, both regimes allow civil penalties, but the amounts recoverable

24

under the CFPA are multiple orders of magnitude greater than under New York law. *Compare* 12 U.S.C. § 5565(c)(2), *with* N.Y. Gen. Bus. L. §§ 349-c, 350-d; *see* Compl. 99 ¶ K (seeking CFPA penalties). New York's claims should be dismissed from Counts 1-6.

### 2.    Wisconsin, Nevada, and Oklahoma

*Wisconsin:* "[I]t is well established by case law that according to the plain meaning of Wis. Const. art. VI, § 3, the attorney general's powers are prescribed only by statutory law." *State v. City of Oak Creek*, 605 N.W.2d 526, 533 (Wis. 2000)*.* "[T]he Wisconsin statutes [are] the sole authority for the attorney general's powers," *id.*, and "absent a specific legislative grant of power," Wisconsin's AG "is devoid of the inherent power to initiate and prosecute litigation intended to protect or promote the interests of the state or its citizens and cannot act for the state as *parens patriae*." Wis. Stat. § 165.015, Notation; *In re Sharp's Est.*, 217 N.W.2d 258, 262 (Wis. 1974).

Counsel for OneMain are unaware of any authority under Wisconsin law empowering its AG to assert CFPA claims. Wisconsin's own consumer protection regime explicitly limits the AG's enforcement power to state law. Wis. Stat. § 100.18(11)(a) ("shall enforce this section").

*Nevada:* Although some older case law suggests Nevada's AG once held limited common law powers, *Nevada v. Moore*, 207 P. 75, 76 (Nev. 1922), more recent decisions state that the AG's "powers and duties … are to be found only in legislative enactment," *Ryan v. Eighth Jud. Dist. Ct. In & For Clark Cty.*, 503 P.2d 842, 844-45 (Nev. 1972); *Nevada v. Douglas Cty.*, 524 P.2d 1271, 1273 (Nev. 1974). And any surviving common law power to litigate affirmatively is limited to that available to English attorneys general before Nevada gained statehood, *Moore*, 207 P. at 76-77.

Counsel for OneMain have located no authority under Nevada law empowering its AG to assert CFPA claims. Nevada's state-law consumer protection regime explicitly limits the scope of the AG's enforcement power to state law. Nev. Rev. Stat. § 598.0963 ("may bring an action … pursuant to NRS 598.0903 to 598.0999").

*Oklahoma:* Oklahoma's AG generally retains background "powers as were usually incident to the office of Attorney General in England under the common law," but does not to the extent those powers are "modified by statutory law." *Oklahoma v. Georgia-Pac. Corp.*, 663 P.2d 718, 721 (Okla. 1982); *see* 12 Okla. Stat. § 2. Oklahoma's legislature has imposed just such a modification. In the very statute that grants limited affirmative litigation powers to the AG, the "legislature specifically considered a proposed enactment which would have invested the Attorney General with standing to institute actions on his own initiative, at his discretion, and rejected it." *Georgia-Pacific*, 663 P.2d at 723 (construing 74 Okla. Stat. § 18b(3)). Rather, Oklahoma's AG may initiate a civil action only "at the request of the Governor, the Legislature, or either branch thereof." 74 Okla. Stat. § 18b(3).

Counsel for OneMain know of no authority under Oklahoma law empowering its AG to assert CFPA claims, and there is no evidence or any suggestion in the Complaint that Oklahoma's AG is proceeding at the governor's or legislature's request. *Cf. Bethune-Hill*, 583 U.S. at 664-66. Oklahoma's own state-law consumer protection regime explicitly limits the scope of the AG's enforcement power to state law. 15 Okla. Stat. § 756.1(A) (authorizing action for violation of "Consumer Protection Act," 15 Okla. Stat. §§ 751 *et seq.*).

Wisconsin's, Nevada's, and Oklahoma's claims therefore should be dismissed from Counts 1-6, and those States should be dismissed as parties.

### 3. Pennsylvania

"The Pennsylvania Constitution empowers the []AG to bring civil actions only when given express statutory authority." *Pennsylvania v. Think Fin., Inc.*, 2016 WL 183289, at *9 (E.D. Pa. Jan. 14, 2016) (citing Pa. Const. Art. IV § 4.1); *Pennsylvania v. Carsia*, 517 A.2d 956, 958 (Pa. 1986) ("[T]he powers of the state Attorney General are … strictly a matter of legislative designation and enumeration."). Unlike some of its sister states, Pennsylvania has authorized its

26

AG to enforce the federal CFPA, but he may do so "*only* upon the request of, or with the approval of," the state Department of Banking and Securities ("DOB"). 71 Pa. Stat. § 733-506(B) (emphasis added). The DOB retains "sole and exclusive jurisdiction … to request that the Attorney General initiate or participate in judicial proceedings." 71 Pa. Stat. § 733-506(F).

That narrow pathway for the AG is "meant to protect the DOB's authority over entities it regulates," including OneMain. *Think Finance*, 2016 WL 183289, at *9. Yet there is no allegation in the Complaint that Pennsylvania's DOB was even consulted about the AG's plan to bring this lawsuit, let alone that it made such a "request" or gave its "approval" for the AG to do so. 71 Pa. Stat. § 733-506(B). Without such a request or approval, Pennsylvania's AG is powerless to assert CFPA claims. Pennsylvania's claims should be dismissed from Counts 1-6.

### F.    Counts 13-18 Fail to State a Claim as a Matter of Law.

Certain States' state-law claims also must fail.

***Maryland, Nevada, and New Jersey:*** The state-law consumer protection claims brought by Maryland, Nevada, and New Jersey (Counts 16-18) are subject to Rule 9(b)'s heightened pleading standard, which requires that "a party must state *with particularity* the circumstances constituting fraud or mistake" (emphasis added). *Bryant v. Koppers, Inc*., 627 F.Supp.3d 466, 478 (D. Md. 2022) (allegations that "false statements, deceptive actions, misrepresentations, omissions, and other acts … deceived" plaintiffs under Maryland CPA subject to heightened pleading standard); *Switch, Ltd. v. Uptime Institute*, *LLC*, 426 F. Supp. 3d 636, 643 (D. Nev. 2019) ("elements of an NDTPA claims must be pled with particularity pursuant to FRCP 9(b)"); *Lieberson v. Johnson & Johnson Consumer Cos., Inc*., 865 F. Supp. 2d 529, 538 (D.N.J. 2011) ("well-established" that "NJCFA claims must meet" Rule 9(b) pleading standard); *see* Md. Code Ann., Com. Law § 13-303; Nev. Rev. Stat. § 598.0915; N.J. Stat. Ann. § 56:8-2.

27

Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004) (citation omitted). The States have not met those requirements for any transactions or consumers, let alone transactions or consumers in Maryland, Nevada, and New Jersey. Rather, the Complaint vaguely recites broad categories of alleged misrepresentations (*e.g.*, ¶¶ 89-96); generic references to "borrowers," "[r]epresentative consumers," or a "typical" customer (*e.g.*, ¶¶ 94-96); and "OneMain" or "OneMain employees" or "representatives" (*e.g.*, ¶¶ 95-96, 122, 125-26).

The States describe OneMain's allegedly deceptive practices at a very high level using a few dozen examples, summaries, and customer complaints. None of these descriptions includes customer names, employee names, or branch locations. Most do not even include associated dates, and only one example provides an exact date (¶ 162). The nearest the pleading comes to reciting any specific misrepresentation is in paragraph 96, in which it copies and pastes a handful of anonymous one- or two-sentence consumer complaints.

But those complaints fail on every prong of the pleading standard. They do not specify any fraudulent statements by OneMain, instead providing a secondhand account of some customers' grievances. *E.g.*, Compl. ¶ 96(c) ("I just learned that OneMain Financial has been misleading and deceiving me with my loan for years now. [W]hen I applied for the loan originally, I was not told about the add-ons. … "). None identifies a speaker, a date or even a date range, branch location, or particular State where the alleged misrepresentation was made. (The Complaint's factual allegations (¶¶ 65-281) do not mention Maryland at all.)

These generic summaries do not even satisfy Rule 8, leaving Rule 9(b) far out of reach. At best, the Complaint "vaguely link[s] allegedly fraudulent statements" to "unknown []

employee[s]" without "identify[ing] those responsible for the [] statements," *Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 122-23 (S.D.N.Y. 2017) (quoting *McLaughlin v. Anderso*n, 962 F.2d 187, 191 (2d Cir. 1992)), and makes "[s]weeping references to the collective fraudulent actions of multiple" anonymous people, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 579-80 (2d Cir. 2005). That is not nearly enough.

*Colorado:* Colorado's allegation that OneMain violates that State's GAP statute also fails. The statute provides, in part, that "[a] GAP agreement shall not be sold to a consumer if the "maximum loan-to-value ['LTV'] ratio in the GAP agreement" exceeds 150%. Colo. Rev. Stat. § 5-9.3-108(1)(e). But the Complaint misreads the statute to impose limits on *finance*, not *GAP*, agreements. Compl.¶ 251. Moreover, the Complaint alleges that OneMain's GAP agreements "impose no LTV limits," meaning they do *not* contain a maximum loan-to-value ratio at all, let alone one that is excessive. *Id.* Colorado's GAP claim therefore lacks merit.

### G.    The States May Not Recover Civil Money Penalties Under Federal or State Law.

The Court may strike requests for relief under Rule 12(f) if the remedy requested is "unavailable as a matter of law." *Doe v. Indyke*, 457 F. Supp. 3d 278, 284-85 (S.D.N.Y. 2020) (Engelmayer, J.) (striking request for punitive damages and collecting similar cases). The States' request for penalties under the CFPA and state law, Compl. 99 ¶ K, should be stricken.

#### 1.    The States May Not Recover CFPA Penalties.

"No civil penalty may be assessed under" the CFPA "unless—(A) *the Bureau* gives notice and an opportunity for a hearing to the person accused of the violation; or (B) the appropriate court has ordered such assessment and entered judgment in favor of *the Bureau*." 12 U.S.C. § 5565(c)(5) (emphases added). "The term 'Bureau' means the Bureau of Consumer Financial Protection." 12 U.S.C. § 5481(2). There is no provision for civil penalties where the CFPB is not involved.

This was not an inadvertent omission; the CFPA's civil penalty scheme requires involvement of the CFPB. Under the statute, when civil penalties are awarded, "the Bureau shall deposit" the proceeds in the "Consumer Financial Civil Penalty Fund"—a designated account to be "maintained and established at a Federal reserve bank." 12 U.S.C. § 5497(d)(1). The funds in that account "shall be available to the Bureau … for payments to [] victims" or for "the Bureau" to use for "consumer education and financial literacy programs." 12 U.S.C. § 5497(d)(2); *see* CFPB, *Payments to harmed consumers by case*, https://tinyurl.com/4xb7sn6r (last visited June 1, 2026). The States may not access the Civil Penalty Fund at all. *See* 12 U.S.C. § 5497(d)(2).

Congress knew how to make State AGs eligible for monetary relief; it did so in the subsection immediately preceding the civil penalties provision, *see* 12 U.S.C. § 5565(b) (costs). But Congress specifically opted not to do so for civil money penalties.

### 2.    The States May Not Obtain State-Law Penalties in This Court.

Seven States (New York, Pennsylvania, Colorado, Maryland, Nevada, New Jersey, and Washington) request civil penalties under their *state-law* consumer protection regimes. Compl. 99 ¶ K (Prayer for Relief). All of those requests except for Washington's should be stricken.

It has long been the case that a penal statute—"one that awards a penalty to the state, or to a public officer in its behalf … to redress a public wrong"—may not be enforced outside its own jurisdiction without a defendant's consent. *Loucks v. Standard Oil Co. of N.Y.*, 120 N.E. 198, 198 (N.Y. 1918) (Cardozo, J.); *see Huntington v. Attrill*, 146 U.S. 657, 673-74 (1892) (statute "cannot be enforced in the courts of another state" if "its purpose is to punish an offense against the public justice of the state" rather than "to afford a private remedy to a person injured by the wrongful act"); *United States v. Federative Rep of Brazil*, 748 F.3d 86, 92 (2d Cir. 2014) (citing "'principle enunciated in federal and state cases that a court need not give effect to the penal or revenue laws of foreign countries or sister states'").

It makes no difference whether the statute is labeled "civil" or "criminal"; the rule against extraterritorial penalties applies "to all suits in favor of the state for the recovery of pecuniary penalties." *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 290 (1888), *disapproved on other grounds, Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 278 (1935); *see Kokesh v. SEC*, 581 U.S. 455, 465 (2017) ("When an individual is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty.").

Further, "the courts of the United States … hav[e] no power to execute the penal laws of the individual states." *Huntington*, 146 U.S. at 672-73. It is "[b]eyond doubt" that a "court of the United States cannot entertain jurisdiction of a suit in behalf of the state, or of the people thereof, to recover a penalty imposed by way of punishment for a violation of a statute of the state." *Id.*; *see Ferguson v. Ross*, 38 F. 161, 163 (C.C.E.D.N.Y. 1889) (suits brought "to enforce penalties imposed by [New York] state law to be paid to the state treasury" "cannot be sustained in the courts of the United States"); *Moore v. Mitchell*, 30 F.2d 600 (2d Cir. 1929) (applying *Pelican Insurance* to bar lawsuit under corollary principle that federal courts have no jurisdiction to enforce a state's revenue laws), *aff'd on other grounds*, 281 U.S. 13 (1930); *Schaefer v. H.B. Green Transp. Line*, 232 F.2d 415, 418 (7th Cir. 1956) ("penalties fixed by state laws are not [enforceable] in federal courts or even in other State courts").[8]

---

[8] The decision in *State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1086 (2d Cir. 1988), is not persuasive contrary authority. There, the court, citing the Supreme Court's *Milwaukee County* decision, stated that, "[a]lthough federal courts have no jurisdiction to enforce the criminal laws of the states, they do have jurisdiction to enforce state penalties that are civil in nature." But that statement conflicts with the Second Circuit precedents, cited above, finding no jurisdiction in cases involving imposition of non-forum civil penalties and taxes. Moreover, *Milwaukee County* provides no basis for a civil/criminal distinction. In the passage cited by *Hendrickson Brothers*, the Court stated that federal courts have authority to adjudicate suits "which do not involve criminal prosecution or punishment, *and which are of a character traditionally cognizable by courts of common law or of equity*." 296 U.S. at 271 (emphasis added). The *Hendrickson Brothers*

31

Here, for at least six of the seven States seeking state-law penalties (all but Washington), the "penalties" at issue are "penal" in the relevant sense. The States seek penalties for alleged violations of each State's public law to be paid to each State's general treasury or administrative account—not to any "aggrieved individual" (or even to a compensatory fund or other *cy pres* distribution).[9] *Kokesh*, 581 U.S. at 463-65; *Loucks*, 120 N.E. at 198. They are "imposed for punitive purposes," to "deter[] infractions of public laws." *Kokesh*, 581 U.S. at 464; *see, e.g.*, *May Dep't Stores v. Colorado*, 863 P.2d 967, 972 (Colo. 1993) ("[a] civil penalty under the [Colorado Consumer Protection Act] is mandatory and is designed to punish and deter the wrongdoer and not to compensate the injured party").

Thus, in *Williams v. Washington*, a Texas court ruled that civil penalties awarded in a Washington case under the Washington Consumer Protection Act were *not penal* precisely because the penalties were to be distributed "*to consumers*" "for the purpose of making restitution." 581 S.W.2d 494, 496 (Tex. Civ. App. 1979). Because the "penalties" were compensatory, not penal, the court enforced the foreign-court judgment. *Id.*

The penalties sought by the other six States should be stricken from the Complaint.

---

court disregarded the second requirement, which incorporates the long-recognized bar on federal actions seeking civil penalties under state law.

[9] N.Y. Gen. Bus. L. § 350-d(a) ("shall accrue to the state of New York"); N.Y. Exec. Law § 63(12); N.Y. Fin. L. § 4(11); 73 Pa. Stat. § 201-8(a) ("shall forfeit and pay to the Commonwealth"); Colo. Rev. Stat. § 6-1-112(1)(a) ("shall forfeit and pay to the general fund of this state"); Md. Code, Comm. L. § 13-410(c) ("recoverable by the State"); Nev. Rev. Stat. §§ 598.0975, 228.322 ("deposited in the Consumer Protection Administrative Account"); N.J. Stat. § 56:8-3.1 ("paid forthwith into the State Treasury for the general purposes of the State"); The penalty recipient under the relevant Washington statute is unclear. Wash. Rev. Code § 19.86.140 ("shall forfeit and pay a civil penalty").

### H.     All Remaining Claims in the Complaint Should Be Dismissed.

This Court's jurisdiction is predicated on the CFPA claims. But the arguments presented here, if sustained, would dispose of all CFPA claims. After dismissal of New York's CFPA claims (Counts 1-6) for lack of standing under state law, and dismissal of the other States' CFPA claims (Counts 1-6 and 14-15) for lack of venue—and dismissal of the CFPA claims that challenge the CFPB Consent Order—no federal question under 28 U.S.C. § 1331 will remain.[10] That is true even if the remaining state-law claims refer to a violation of the CFPA or another federal statute. *See DailyPay*, 2025 WL 2695712, at *4-8; *Sirius XM Radio*, 735 F. Supp. 3d at 281-82.

If this Court dismisses the federal claims, therefore, it should dismiss the remaining claims for lack of jurisdiction. "A district court usually should decline the exercise of supplemental jurisdiction" under 28 U.S.C. § 1367 "when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

## IV.     CONCLUSION

The States' Complaint should be dismissed.

---

[10] Because the defects of venue, standing, res judicata, and lack of jurisdiction to evade the Consent Order are incurable, the federal claims should be dismissed with prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Respectfully submitted,

/S/ Ryan T. Scarborough
Ryan T. Scarborough
Joseph M. Terry
Suzanne M. Salgado
WILLIAMS & CONNOLLY LLP
650 Fifth Avenue, Suite 1500
New York, NY 10019
(202) 434-5000
rscarborough@wc.com
jterry@wc.com
ssalgado@wc.com

*All appearing pro hac vice*

Andrew J. Pincus (*pro hac vice* submitted)
Charles A. Rothfeld (*pro hac vice* submitted)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC
(202) 263-3000
apincus@mayerbrown.com
crothfeld@mayerbrown.com

/S/ Benjamin D. Bright
Benjamin D. Bright
1221 Avenue of the Americas
MAYER BROWN LLP
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Counsel for Defendants*

June 1, 2026

34

**CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on June 1, 2026.

/s/ Benjamin D. Bright
Benjamin D. Bright

**APPENDIX**

| Cause of Action | Grounds for Dismissal |
|---|---|
| All Claims | <ul><li>The Court lacks jurisdiction over each claim to the extent it is based on OneMain's acts implementing the CFPB Consent Order.</li><li>The States may not recover civil money penalties under federal law; only Wisconsin may recover monetary penalties under state law.</li></ul> |
| (1) CFPA Deception | <ul><li>Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.</li><li>States (except New York) cannot establish venue for their CFPA claims.</li><li>New York, Nevada, Oklahoma, Pennsylvania, and Wisconsin lack standing to assert CFPA claims.</li></ul> |
| (2) CFPA Unfairness | <ul><li>Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.</li><li>States (except New York) cannot establish venue for their CFPA claims.</li><li>New York, Nevada, Oklahoma, Pennsylvania, and Wisconsin lack standing to assert CFPA claims.</li></ul> |
| (3) CFPA Abusiveness | <ul><li>Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.</li><li>States (except New York) cannot establish venue for their CFPA claims.</li><li>New York, Nevada, Oklahoma, Pennsylvania, and Wisconsin lack standing to assert CFPA claims.</li></ul> |
| (4) CFPA Abusiveness | <ul><li>Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.</li><li>States (except New York) cannot establish venue for their CFPA claims.</li><li>New York, Nevada, Oklahoma, Pennsylvania, and Wisconsin lack standing to assert CFPA claims.</li></ul> |
| (5) Violation of TILA | <ul><li>Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.</li><li>The States lack authority to enforce federal consumer financial law.</li><li>States (except New York) cannot establish venue for their CFPA claims.</li><li>New York, Nevada, Oklahoma, Pennsylvania, and Wisconsin lack standing to assert CFPA claims.</li></ul> |
| (6) Violation of TILA | <ul><li>Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.</li><li>The States lack authority to enforce federal consumer financial law.</li><li>States (except New York) cannot establish venue for their CFPA claims.</li></ul> |

1

| Cause of Action | Grounds for Dismissal |
|---|---|
|  | • New York, Nevada, Oklahoma, Pennsylvania, and Wisconsin lack standing to assert CFPA claims. |
| (7) New York Executive Law § 63(12) | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (8) New York General Business Law §§ 349 and 350 | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (9) New York Executive Law § 63(12) | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (10) Pennsylvania CPL | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (11) Pennsylvania CPL | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (12) Pennsylvania CPL | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (13) Colorado C.R.S. § 5-9.3-108 | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal.<br>• This claim fails as a matter of Colorado law. |
| (14) CFPA Unfairness | • Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.<br>• Colorado cannot establish venue for its CFPA claims. |
| (15) CFPA Abusiveness | • Res judicata bars the claim to the extent it is based on conduct that pre-dates the CFPB Consent Order.<br>• Colorado cannot establish venue for its CFPA claims. |
| (16) Maryland CPA | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal.<br>• Maryland fails to meet Rule 9(b)'s heightened pleading standard. |
| (17) Nevada DTPA | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal.<br>• Nevada fails to meet Rule 9(b)'s heightened pleading standard. |
| (18) New Jersey CFA | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal.<br>• New Jersey fails to meet Rule 9(b)'s heightened pleading standard. |

3

| Cause of Action | Grounds for Dismissal |
|---|---|
| (19) New Jersey CFA | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |
| (20) Washington CPA | • The Court should decline to exercise supplemental jurisdiction over this state-law claim as each federal claim is subject to dismissal. |

3