# Exhibit G

*Document By* **WESTLAW**

NY Spons. Memo., 2025 S.B. 8416

## New York Sponsors Memorandum, 2025 S.B. 8416

June 14, 2025
New York Assembly
248th Legislature, 2025 Regular Session

SPONSOR: COMRIE TITLE OF BILL:

An act to amend the general business law, in relation to enacting the "fostering affordability and integrity through reasonable (FAIR) business practices act"

PURPOSE:

To permit the Attorney General to bring actions or proceedings to enjoin, penalize, and seek restitution for abusive and unfair business practices and abolish "consumer-oriented" limits on the Attorney General's enforcement authority; as well as make technical improvements to Attorney General enforcement.

SUMMARY OF PROVISIONS:

Section 1 provides for the title of the enactment.

Section 2 adopts a new □ 348 of the General Business Law (GBL) setting

out the purpose and intent of Article 22-a.

Section 3 amends the article heading of Article 22-a to read "Protection from Unfair, Deceptive, and Abusive Acts and Practices."

Section 4 amends □ 349 of the GBL to outlaw unfair and abusive acts and practices and provide a definition of "unfair" and "abusive" acts and practices derived from the Federal Trade Commission Act, 15 U.S.C. □ 41 et seq. ("unfair") and the Consumer Financial Protection Act, 12 U.S.C. □ 5531(d) ( "abusive") with certain modifications. It continues the existing law's prohibition on deceptive acts and practices without modification.

It eliminates, in enforcement actions or proceedings brought by the Attorney General, the "consumer-oriented" doctrine developed by the courts to limit the applicability of the statute.

Section 5 provides that each part of the act is severable from each other part in the event one or more parts are adjudicated invalid.

Section 6 provides an effective date of 60 days following enactment.

JUSTIFICATION:

The "Fostering Affordability and Integrity through Reasonable (FAIR) business practices act" ("the FAIR Business Practices Act") updates the Attorney General's powers to enforce New York's consumer protection laws by adding federal authorities that are presently at risk of falling into desuetude.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

New York Sponsors Memorandum, 2025 S.B. 8416, New York Sponsors Memorandum,...

Case 1:26-cv-02117-PAE    Document 104-7    Filed 06/01/26    Page 3 of 5

The bill brings the Attorney General's consumer protection authority into line with now-47 states that outlaw unfair business practices, updates enforcement mechanisms not touched since 1980, and closes a court-created loophole inadvertently and inappropriately applied to Attorney General enforcement actions and proceedings.

It also augments the Attorney General's powers to protect consumers and businesses in the wake of the federal government's attempted dismantlement the Consumer Financial Protection Bureau (CFPN, protected New Yorkers from abusive acts perpetrated by businesses.

Although this memo uses the word "businesses" to describe defendants or potential defendants in FAIR Business Practices Act enforcements and litigations and "business practices" to describe the acts and practices of those persons, the acts and practices of non-profit entities are covered by the Act, and nonprofits are protected to the same extent as businesses are by any of the Act's protections or defenses.

OUTLAWING ABUSIVE AND UNFAIR ACTS AND PRACTICES.ct.

According to the National Consumer Law Center, 47 states other than New York already outlaw "unfair" business practices; many have done so since 1967. The FAIR Business Practices Act defines "unfair" practices using the Federal Trade Commission's definition, updated to cover businesses and non-profits as well as consumers (15 USC □ 45(n)). This definition is narrower than most states' definitions of "unfair" acts and practices and is designed to be easy to comply with because it already applies to everyone under federal law.

The Act applies to harms against businesses or non-profits as well as consumers, although it keeps the requirement that the benefits proposed to outweigh such harms must be to consumers or competition. By defining unfair acts and practices as extending to injury to more than just "consumers," the FAIR Business Practices Act does not observe the distinction found in the FTCA between "unfair competition" and "unfair acts and practices" (cf. Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co., 20 Cal 4th 163, 179-81 (1999)). The omission of "unfair competition" in the FAIR Business Practices Act should not be interpreted to exclude by negative implication acts and practices that constitute unfair competition. Nor does the fact that an act was found to be an unfair method of competition (or, indeed, an unfair act) under some different statute per se determine whether the act is an unfair act or practice under the FAIR Business Practices Act. The question is always whether the act or practice satisfies the Act's particular defmition of "unfair."

The FAIR Business Practices Act defines "abusive" practices in line with the federal Consumer Financial Protection Act (12 USC □ 5531(d)): Abusive practices are those that materially interfere with someone else's understanding of a term or condition of a good or service, or that unreasonably take advantage of someone else's lack of understanding of relevant risks, inability to protect their own interests, or reasonable reliance on another person to act in their interests.

The FAIR Business Practices Act expands this defmition in two ways. First its protections apply beyond consumer financial products as this is a general-purpose statute. Second, it applies to both sides of the commercial equation, such that those who sell goods or services (including employees and contractors) are just as protected as those who buy them.

The Act provides that the prohibition on unfair or abusive acts and practices is enforceable only by the Attorney General. No change is

intended to be made to the private right of action, which remains limited to consumer-oriented deceptive acts and practices.

PRESERVING FEDERAL AND STATE INJURY REQUIREMENTS.ct.

The FAIR Business Practices Act does not disturb existing caselaw requiring a private plaintiff alleging a deceptive act or practice show that the "act or practice that caused actual, although not necessarily pecuniary, harm" (Oswego Laborers, 85 NY2d at 26). The FAIR Business Practices Act also does not alter existing law providing that an act is deceptive even in the absence of reliance (see Stutman v Chem. Bank, 95 NY2d 24, 30 (2000)).

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

New York Sponsors Memorandum, 2025 S.B. 8416, New York Sponsors Memorandum,...

Case 1:26-cv-02117-PAE   Document 104-7   Filed 06/01/26   Page 4 of 5

The Act continues the current statute's provision that the Attorney General need not prove either likely or actual injury as a condition for bringing an enforcement for deception (see, e.g., Goshen v Mut. Life Ins. Co. of New York, 98 NY2d 314, 324 (2002)), consistent with the Attorney General's vital role in policing the marketplace as a whole and preventing unfair, abusive, and deceptive practices, ideally before they claim their first victim. In the same way, the Attorney General need not show injury, or likely injury, to prove that a particular practice is abusive.

If the Attorney General seeks to bring an enforcement against an unfair act or practice, however, the Attorney General must show the act or practice "causes or is likely to cause substantial injury." The likely or actual "substantial injury" that the Attorney General must show is different from the "actual" injury that must be shown to maintain a private right of action. Each definition-substantial injury for Attorney General unfairness proceedings, "actual, although not necessarily pecuniary, harm" for deceptiveness private rights of action-must be analyzed separately and in the context of their independently developed caselaw.

In the overwhelming majority of cases, the same injury will suffice for both, as in the federal context "substantial injury" means injury "having a real existence" rather than "of ample or considerable size" (see generally FTC Policy Statement on Unfairness, https://www.fic.govilegal-library/browse/ftc-policystatement-unfairness (Dec 17, 1980) (describing "substantial injury" as not "trivial or merely speculative harms"), cf. Oxford English Dictionary, Substantial, definitions 1.3, 11.11("substantial" here takes definition II.11, not I.3)).

There are two primary ways in which the Attorney General's "substantial injury" standard may diverge from the "actual, though not necessarily pecuniary, harm" standard for the private right of action. First, and most obviously, the Act allows the Attorney General to show only that the act or practice is "likely to cause" substantial injury. Second, "substantial injury" may involve harms of a nature that would not rise to the standards of injury demanded under state law in a private right of action but would nonetheless be deemed substantial under federal law (see generally American Fin. Servs. Ass 'n v FTC, 767 F2d 957, 972 (DC Cir 1985) (an act or practice causes substantial injury when it causes "small harm to a large number of people, or if it raises a significant risk of concrete harm")).

In relying on federal law in this way, it is important to observe the one change expressly made by the text to the federal "substantial injury" requirement: The substantial injury may, but need not, be caused to a person or persons who are consumers, consistent with the overall purpose of the FAIR Business Practices Act of permitting the Attorney General to enforce it as to the whole economy.

ABOLISHING THE "CONSUMER-ORIENTED" DOCTRINE IN ATTORNEY GENERAL ENFORCEMENTS.ct.

New York's current law banning deceptive business practices has been interpreted to apply only to "consumer-oriented" practices that "affect the public at large" rather than "private contract disputes, unique to the parties" (Oswego Laborers, 85 NY2d at 25). The underlying statute, however, does not require-or even reference-'consumer-oriented" conduct. This rule was established in the early 1980s by courts concerned that complex high-value commercial negotiations might be distorted if consumer protection laws could be applied by the parties to those negotiations when the deal goes bad (see Genesco Entertainment v Koch, 593 F Supp 743, 752-53 (SDNY 1984) (originating the requirement), approved by Oswego Laborers, 85 NY2d at 25-26).

The "consumer-oriented" doctrine has been applied erroneously to reject enforcements brought by the Attorney General, whose enforcements are, by definition, brought in the name of the People of New York to protect the public interest. Moreover, the salient reasons for the consumer-oriented doctrine have no relevance to Attorney General enforcement actions; indeed, as the residential mortgage-backed securities crisis demonstrated, sophisticated private commerical deals can sometimes have enormous public consequences not apparent at the time they are made. Worse, the doctrine has prevented the Attorney General from engaging in enforcements designed to protect businesses and non-profits, particularly small businesses and non-profits, from deceptive acts and practices.

The FAIR Business Practices Act accordingly exempts Attorney General enforcements (whether for unfair, deceptive, or abusive conduct) from the "consumer-oriented" doctrine, in all its varieties and formulations, including "public impact" "unique to the

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

New York Sponsors Memorandum, 2025 S.B. 8416, New York Sponsors Memorandum,...

Case 1:26-cv-02117-PAE    Document 104-7    Filed 06/01/26    Page 5 of 5

parties" "one-off" and so on. In Attorney General enforcements, liability is established when the Attorney General establishes that the challenged act or practice satisfies one or more of the definitions in subdivision (a). That is all that is required.

The abolition of the "consumer-oriented" doctrine as applied to Attorney General enforcements may lead to courts needing to alter slightly the application of the existing judicial definition of "deceptive acts and practices." Presently, the existing "objective" definition of "deceptive acts and practices" set out in Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A. (85 NY2d 20, 26 (1995)), is "whether representations or omissions" are "likely to mislead a reasonable consumer acting reasonably under the circumstances." This definition continues to apply, without modification, to the private right of action.

But with the abolition of "consumer-oriented," it is now possible for the Attorney General to bring enforcements deceptive acts and practices that are not oriented to consumers. In many such cases, the reasonable consumer standard will still be appropriate, but if the act or practice is exclusively directed to members of a particular non-consumer population, to give effect to the abolition of consumer-oriented it may be necessary for the court to apply the objective standard of the reasonable member of that population instead of the average reasonable consumer.

The Act does not disturb existing caselaw concerning the application of the consumer-oriented doctrine to the private right of action (see, e.g., Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 178 (2021)). It simply provides that this doctrine no longer applies to Attorney General enforcements.

STREAMLINING ATTORNEY GENERAL PROCEEDINGS.ct.

The FAIR Business Practices Act reaffirms the Attorney General's authority to enforce the law against New York businesses that victimize nonNew York residents, and non-New York businesses that victimize New Yorkers, consistent with the Attorney General's broad responsibility to ensure an honest marketplace in New York and New York's reciprocal responsibilities to other states to, where appropriate, seek restitution for out-of-state victims of in-state unfair, deceptive, and abusive acts and practices.

The FAIR Business Practices Act also clarifies that the Attorney General may enforce the statute by plenary action or by using the more efficient Article 4 special court proceedings the Attorney General is already authorized to use under Executive Law □ 63(12), among other statutes (see, e.g., Matter of People v Applied Card Sys., Inc., 27 AD3d 104, 109 (1st Dep't 2005)).

PRIOR LEGISLATIVE HISTORY:

New bill.

FISCAL IMPLICATIONS:

It is anticipated that the increased civil penalty and widened protections proposed in the bill would result in an increase in monies remitted to the state by violators and perpetrators.

EFFECTIVE DATE: This act shall take effect on the 60th day after it shall have become law.

NY Spons. Memo., 2025 S.B. 8416

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.