# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                        :
                                                        :
BENJAMIN M. LAWSKY, Superintendent of                   :
Financial Services of the State of New York,            :
                                                        :
                                    Plaintiff,          :     Case No: 14 Civ. 2863 (CM)
                                                        :
            - against -                                 :
                                                        :
CONDOR CAPITAL CORPORATION                              :
and STEPHEN BARON,                                      :
                                                        :
                                    Defendants.         :
                                                        :
            -and-                                       :
                                                        :
WELLS FARGO BANK, N.A. as Agent for Certain            :
Financial Institutions as Lenders,                      :
                                                        :
                                    Intervenor.         :
-----------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/14

## FINAL CONSENT JUDGMENT

WHEREAS, pursuant to 12 U.S.C. § 5552, the Superintendent of Financial Services of

the State of New York (the "Superintendent") filed a complaint on April 23, 2014 (the

"Complaint") alleging that Condor Capital Corporation ("Condor") and Stephen Baron

(collectively, "Defendants") violated the Dodd-Frank Wall Street Reform and Consumer

Protection Act ("Dodd-Frank") and that Condor violated the New York Financial Services Law

and the New York Banking Law as a result of Condor's wrongfully retaining its customers'

positive credit balances and taking active steps to conceal such balances from its customers and

its regulators, in particular the Department of Financial Services (the "Department"), and

Condor's failure to secure its customers' personally identifiable information (the "Action");

WHEREAS, on May 13, 2014 the Court entered an Order granting the Superintendent's motion for a preliminary injunction and appointing Denis O'Connor as Receiver of Condor (the "Receiver"), and granting the motion to intervene filed by Wells Fargo Bank, N.A. ("Wells Fargo") as agent for a consortium of Condor's secured lenders (the "Lenders");

WHEREAS, the Receiver issued reports dated June 2, 2014, June 23, 2014, July 14, 2014, September 2, 2014, and October 3, 2014 in which he confirmed the allegations set forth in the Complaint concerning Condor's failure to refund consumers' positive credit balances and Condor's deficient governance, compliance and internal controls, and set forth facts demonstrating that Condor had violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z ("Reg Z"), 12 C.F.R. § 1026.1 *et seq.*, by charging its customers excessive interest rates;

WHEREAS, on or about November 14, 2014, the Receiver effectuated a sale of a portion of Condor's loan portfolio and repaid Condor's remaining debt to the Lenders;

WHEREAS, Condor represents that it has a stable banking relationship that permits the new bank to accept payments on Condor's behalf in all manners that Condor currently accepts payments through its operating bank account with Citibank, N.A., including payment via the Automated Clearing House network, check, or money order;

WHEREAS, Defendants have executed the Consent annexed hereto and incorporated herein for the purpose of settling the above-captioned action before the Court;

WHEREAS, Defendants have entered general appearances; consented to the entry of this Final Consent Judgment; admitted the allegations of the Complaint as to personal and subject matter jurisdiction; admitted the facts set forth below and admitted that their conduct violated Dodd-Frank, the New York Banking Law, the New York Financial Services Law, and TILA and

2

Reg Z; and waived findings of fact and conclusions of law and any right to appeal from this Final

Consent Judgment in the Action; and

WHEREAS, Defendants admit to the following facts and violations of law:

## DEFENDANTS' ADMISSIONS

1.      Condor engaged in the conduct set forth in the following paragraphs and Stephen

Baron provided substantial assistance to Condor's conduct described herein.

### Positive Credit Balances

2.      By engaging in the conduct described below, Condor concealed from its

customers, the Department and the New York State Comptroller the fact that thousands of its

customers had refundable positive credit balances (*i.e.,* money owed by Condor to a customer as

a result of an overpayment of the customer's account). Condor retained these positive credit

balances for itself, and also concealed that fact from its customers, the Department and the New

York State Comptroller. Condor maintained a policy of failing to refund positive credit balances

except when expressly requested by a customer. Condor did not notify its customers when

positive credit balances remained in their accounts at the conclusion of their loans. Furthermore,

Condor programmed its website to terminate customers' access to their account information once

their loans were terminated, even if the customers had positive credit balances in their accounts.

3.      Pursuant to the New York Abandoned Property Law § 301, Condor is required to

submit an annual report to the New York State Comptroller's Office of Unclaimed Funds

identifying unclaimed property belonging to New York residents as well as residents of other

states. Unclaimed and un-refunded positive credit balances belonging to Condor's customers

constitute unclaimed property that Condor must report pursuant to the New York Abandoned

Property Law. Despite the fact that Condor's customers had positive credit balances, Condor

3

filed negative unclaimed property reports with the Comptroller and, after April 2011, has filed no reports thus representing to the New York State Comptroller that Condor has no unclaimed property.

4. Pursuant to the New York Abandoned Property Law §§ 302 and 303, Condor is required to deliver to the New York State Comptroller, or escheat, all unclaimed funds on or before the tenth of November of each calendar year. Condor is further required to report the name, account number, and last known address for the escheated funds. Despite the fact that Condor's customers had positive credit balances, Condor has never escheated unclaimed funds to the New York State Comptroller.

5. Condor's acts and omissions detailed in paragraphs 1 through 4, *supra*, constitute unfair, deceptive, and abusive practices in violation of Sections 1031 and 1036 of Dodd-Frank, 12 U.S.C. §§ 5531, 5536.

## Misrepresentations in Connection with the Provision of a Financial Product or Service

6. The conduct described in paragraphs 1 through 5, *supra*, also constitutes misrepresentations to customers and the Department in violation of Section 408 of the New York Financial Services Law and Section 499 of the New York Banking Law.

## Endangerment of Customer Data and Information

7. Condor failed to employ reasonable and appropriate measures to protect the private and confidential personal and financial information of its customers. Condor left customers' hard-copy loan files, which contain consumers' personally identifiable information and confidential information about the consumers' income, expenses, savings, assets, debts, and contact information for personal references, piled openly around its offices. Condor stored

thousands of customers' hard-copy loan files in open boxes or bins on the shelves and floor of a garage attached to its office that was in use and not routinely secured.

8.      Condor's mishandling of confidential personal and financial information of its customers constitutes an unfair, deceptive, and abusive act or practice in violation of Sections 1031 and 1036(a)(1) of Dodd-Frank, 12 U.S.C. §§ 5531 and 5536(a)(1)(B).

## TILA and Reg Z Violations

9.      TILA and Reg Z prohibit a creditor from charging a consumer an annual percentage rate ("APR") greater than one one-eighth of one percent more than the APR disclosed in the consumer's loan documents.  Condor calculated the interest it charged its customers based on a 360-day year (*i.e.*, by dividing the annual interest rate specified in Condor's contract with a customer, by 360) and applied the resulting daily interest rate to its customers' loan accounts each of the 365 days during the year (or 366 days in a leap year).  The application of a daily interest rate calculated based on a 360-day year, to a 365-day year, resulted in an APR in excess of the one-eighth of one percent tolerance permitted under TILA and Reg Z for all loans with an interest rate greater than nine percent.  Condor typically does not originate loans with an interest rate of less than twelve percent, and the average interest rate of a Condor loan is fifteen and one half percent.

10.     In June 2013, after Condor changed to a 365-day year to calculate interest, Condor added one-eighth of one percent interest to all of its loans.  In August 2013, after the Maryland Office of the Commissioner of Financial Regulation discovered this practice and informed Condor that it was improper, Condor removed the one-eighth of one percent interest from its loans to Maryland consumers but continued to apply the additional one-eighth of one percent interest to all of its other loans.  On January 27, 2014, Condor removed the one-eighth of

5

one percent interest from all of its loans. However, on January 29, 2014, Condor again added the one-eighth of one percent interest to all of its loans to New York consumers that had terminated prior to December 10, 2013.

11. Condor's practice of calculating its customers' daily interest rate based on a 360-day year rather than the actual number of days in a year resulted in Condor's customers paying greater than one-eighth of one percent more than the APR disclosed in their loan documents in violation of TILA, 15 U.S.C. § 1606(c) and Reg Z, 12 C.F.R. § 226.14(a).

### Substantial Assistance of Unfair, Deceptive, and Abusive Practices

12. Stephen Baron, as the Chief Executive Officer and President of Condor, and, further, as the person responsible for oversight of Condor's operations and for setting and effectuating policies, has knowingly or recklessly provided substantial assistance to Condor in its policy of retaining for itself positive credit balances belonging to Condor's customers, and endangering the safety and security of its customers' confidential personal and financial information. Furthermore, as the person responsible for the oversight of Condor's operations and for setting and effectuating policies, Stephen Baron has knowingly or recklessly provided substantial assistance to Condor in its failure to employ reasonable and appropriate measures to protect private and confidential financial and personal information of its customers. Moreover, Stephen Baron failed to correct misleading representations on Condor's website suggesting that customers' information had been protected by such measures.

13. Stephen Baron has thus violated Section 1036(a)(3) of Dodd-Frank, 12 U.S.C. § 5536(a)(3), by providing substantial assistance to Condor's violations of Section 1031 of Dodd-Frank, 12 U.S.C. § 5531.

6

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

**I.**

A.    For purposes of this Final Consent Judgment, a person shall be considered "Independent" if the person: (1) is not related by blood or marriage to Stephen Baron; (2) is not a current or former business associate or personal acquaintance, including an employee or employer, of Stephen Baron or any person related by blood or marriage to Stephen Baron; and (3) is not a current or former attorney, fiduciary, or other advisor who has represented Stephen Baron, Condor, or any person related by blood or marriage to Stephen Baron.

B.    The Receiver shall sell all remaining loans in Condor's loan portfolio to one or more Independent purchaser(s) that is (are) in compliance with all applicable licensing requirements. The Receiver shall enter into a binding, written letter of intent to sell all remaining loans in Condor's loan portfolio ("Letter of Intent") no later than one-hundred-twenty days after January 5, 2015 or one-hundred-twenty days after the entry of this Final Consent Judgment, whichever is later, which date may be extended for good cause. If the date of the sale is extended, the provisions of paragraph C of this section shall not apply except that the Receiver shall retain the sole authority to effectuate the sale of Condor's loans and Stephen Baron and/or Defendants' counsel shall be permitted to consult with the Receiver only to the extent permitted by the Receiver. In all events, the Receiver shall structure the sale of Condor's loans in a manner that ensures that Stephen Baron shall exercise no influence, directly or indirectly, over the servicing of these or any other loans at any present or future time, and shall include in any documents memorializing any such sale transaction language to this effect. The Receiver shall provide a copy of this Final Consent Judgment to any potential purchaser of Condor's loan

7

portfolio. Before entering into any agreement to sell Condor's loans, the Receiver shall inform the Department of the person(s) or entity(ies) that the Receiver intends to enter into an agreement with to purchase Condor's loans. The Department shall be provided an opportunity to reject, and may reject, any potential purchaser of Condor's loans. The Department shall not unreasonably reject any such potential sale. Any such rejection shall extend the one hundred twenty day sale period set forth in this paragraph by an additional sixty days. Within the one-hundred-twenty day sale period set forth in this paragraph, by formal written notice to the Receiver and to the Department, Stephen Baron shall have one opportunity to reject, and may reject, a Letter of Intent. In the event that Mr. Baron exercises such right to reject, the period of his participation shall be extended for one final sixty-day period. Notwithstanding the foregoing, Stephen Baron shall not unreasonably withhold his consent to any such potential sale. If a Letter of Intent is executed within the one-hundred-twenty-day period contemplated by this Paragraph I.B, Mr. Baron shall be permitted to participate in the steps necessary to consummate the financial terms of that transaction in cooperation with the Receiver.

C.      The Receiver shall retain the sole authority to effectuate the sale of Condor's loans; provided, however, that Stephen Baron and/or Defendants' counsel shall be permitted to consult with the Receiver concerning such sale during the one-hundred-twenty-day sale period as set forth in this paragraph. Stephen Baron and/or Defendants' counsel shall be permitted to suggest potential purchasers to the Receiver and the Receiver shall exercise reasonable efforts to contact any potential purchaser suggested by Stephen Baron and/or Defendants' counsel, unless the Receiver believes that such a potential purchaser raises consumer protection concerns. After suggesting a potential purchaser to the Receiver, Stephen Baron and/or Defendants' counsel shall only communicate with the potential purchaser with the Receiver's prior written permission.

8

Stephen Baron and/or Defendants' counsel shall promptly inform the Receiver of the substance of any communication with any potential purchaser, to the extent the Receiver did not participate in the communication. The Receiver shall share bid letters, the Receiver's analysis of bid letters, and financial analyses prepared by or received by the Receiver with Stephen Baron and/or Defendants' counsel, who shall be permitted to participate in the drafting and review of contracts concerning the sale of Condor's loans. Stephen Baron and/or Defendants' counsel shall be permitted to participate in negotiating the financial terms of contracts concerning the sale of Condor's loans in the presence of the Receiver. Stephen Baron and/or Defendants' counsel shall be permitted to participate in negotiating the financial terms of contracts concerning the sale of Condor's loans without the Receiver present if the Receiver grants Stephen Baron and/or Defendants' counsel prior written permission to engage in such negotiations with specific potential purchasers. Stephen Baron and/or Defendants' counsel shall promptly inform the Receiver of the substance of any negotiation concerning the financial terms of the sale of Condor's loans, to the extent the Receiver did not participate in the negotiation. The Receiver shall promptly inform Stephen Baron and Defendants' counsel of the substance of any negotiation concerning the financial terms of the sale of Condor's loans, to the extent Stephen Baron and/or Defendants' counsel did not participate in the negotiation.

D.      Stephen Baron and Condor shall cooperate with the Receiver and shall not interfere with the Receiver's negotiations for the sale or the effectuation of the sale of Condor's loans, including but not limited to providing all documentation and information requested by the Receiver, and complying with the Receiver's instructions concerning the sale of Condor's loan portfolio.

9

E.      Consistent with the Court's May 13, 2014 Order, the Receiver shall retain his authority to manage the business of Condor during the Receivership by performing all incidental acts that the Receiver deems to be advisable or necessary, including retaining, hiring or dismissing any employees, independent contractors, or agents.

F.      After the Receiver sells the remainder of Condor's loans, the treatment and disposal of the proceeds of the sale and Condor's remaining assets shall be left to Condor's and Stephen Baron's discretion so long as such treatment and disposal is consistent with all applicable law.

## II.

### IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that:

A.      Condor and Stephen Baron shall pay a civil monetary penalty of $3,000,000 to the Department within ten days of execution of this Final Consent Judgment.  The payment shall be in the form of a wire transfer in accordance with the Department's instructions or a certified or bank check made payable to the "Superintendent of Financial Services" and mailed to: New York State Department of Financial Services, One State Street, New York, New York, 10004-1511, Attn: Joy Feigenbaum, Executive Deputy Superintendent, Financial Frauds & Consumer Protection.

B.      The Receiver shall establish an escrow account and place $6,643,630 in the escrow account to fund restitution payments to Condor's customers, as follows:

10

1.      Positive Credit Balances.  Condor shall refund all positive credit balances that remain in a customer's account after the customer's loan has been terminated for the entire history of Condor's loan portfolio.  In addition, Condor shall pay such customers interest of nine percent per annum.  If Condor has already refunded the amount that a customer was owed for this category of loans but Condor did not pay the full amount of interest on the amount owed as required in this paragraph, Condor shall issue an additional check to the customer for all interest owed to the customer.

2.      TILA Violations.  Condor shall refund all interest it charged its customers in violation of TILA as described above in paragraphs 9-11 of Defendants' Admissions for the entire history of Condor's loan portfolio.  In addition, Condor shall pay such customers interest of nine percent per annum.  If Condor has already refunded the amount that a customer was owed for this category of loans but Condor did not pay the full amount of interest on the amount owed as required in this paragraph, Condor shall issue an additional check to the customer for all interest owed to the customer.

3.      Legal accounts.  It shall be Condor's burden to establish that any consumer listed in Exhibit A is not owed a refund.  Condor shall have 90 days from the date this Final Consent Judgment is entered ("Escrow Period") to establish to the satisfaction of the Receiver or the Department at the Department's sole discretion that any consumer listed in Exhibit A is not owed a refund. Condor shall refund to its customers any amount that it has not demonstrated by the end of the Escrow Period is not due, plus interest of nine percent per annum.

11

If Condor has already refunded the amount that a customer was owed for this category of loans but Condor did not pay the full amount of interest on the amount owed as required in this paragraph, Condor shall issue an additional check to the customer for all interest owed to the customer. At the conclusion of the 90-day period, the Department will direct any escrowed monies which it concludes are not owed to Condor customers for legal accounts to be returned to Condor.

C.    Condor shall take all commercially reasonable steps to ascertain the current addresses of all customers who are owed refunds, including but not limited to searching the National Change of Address Database, before mailing refund checks to its customers.

D.    Stephen Baron shall retain an Independent third-party administrator selected by the Department (the "Third-Party Administrator") to manage the completion of the restitution process following the termination of the Receivership, including assuming control of the escrow account established pursuant to paragraph B of this Section, responding to requests to re-issue expired checks, and escheating abandoned property in accordance with applicable state laws. Stephen Baron shall be fully and solely responsible for all proper fees, expenses and disbursements of the Third-Party Administrator in connection with the restitution process prescribed in this Final Consent Judgment.

E.    Refunds owing to customers who Condor cannot locate or who do not cash a refund check within 180 days of the issuance of the check shall escheat in accordance with applicable state abandoned property laws, provided that Condor shall re-issue any refund check that has not been cashed after 180 days if a customer contacts Condor and/or the Department and Condor has not yet sent the funds to the applicable state agency.

12

## III.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

A.      If the Department determines that a Condor customer suffers identity theft within two years of the date this Final Consent Judgment is entered that is traceable to Condor's conduct, within ten days' notice from the Department Stephen Baron shall reimburse the customer for any damages suffered as a result of the identity theft and shall provide free credit reporting to the customer for two years.

B.      This Final Consent Judgment shall not be deemed to compromise any individual's claims and no consumer shall be required to provide a release in connection with the receipt of restitution payments provided pursuant to Section II of the Final Consent Judgment.

## IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

A.      Condor shall surrender its New York sales finance company license and any other license that permits Condor to make or acquire consumer loans in any state no later than ten days after all of the following have occurred: (1) the Receiver has sold Condor's loan portfolio pursuant to Section I of the Final Consent Judgment; (2) Condor and/or Stephen Baron have paid the civil monetary penalty pursuant to Section II of the Final Consent Judgment; and (3) Condor has paid the restitution and interest pursuant to Section II of the Final Consent Judgment.

B.      Condor shall surrender its New York sales finance company license by submitting a letter to the Department on Condor letterhead, signed by Stephen Baron, containing the following information:

13

1.  A statement that the company/headquarters license and all branch licenses are being surrendered.

2.  A statement describing the disposition of the New York loan portfolio.

3.  The physical location where the books and records of Condor will be maintained pursuant to the requirements of 3 NYCRR § 403.1(f) and any other applicable laws and regulations.

4.  The name, title, address and telephone number of the individual responsible for safekeeping of Condor's books and records and for responding to consumer complaints and Department of Financial Services inquiries.

C.  Condor shall submit to the Department all original licenses and riders issued by the Department. If a license is lost or misplaced, Condor shall submit an executed and notarized "Lost License Affidavit" to the Department.

D.  Condor shall surrender all other state licenses in accordance with the procedures and requirements of those states.

## V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

The Receivership and the Court's previous Orders and Opinions shall remain in full force and effect, and shall not terminate until each of the following events have occurred: (1) the Receiver has sold Condor's loan portfolio pursuant to Section I of the Final Consent Judgment; (2) Condor and/or Stephen Baron have paid the civil monetary penalty pursuant to Section II of the Final Consent Judgment; (3) Condor has paid the restitution and interest pursuant to Section

14

II of the Final Consent Judgment; (4) Condor has retained the Third-Party Administrator; and (5) Condor has surrendered all of its licenses pursuant to Section III of the Final Consent Judgment.

## VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

A.      In the event the Department believes Condor or Stephen Baron to be in breach of the Final Consent Judgment ("Breach"), the Department will provide written notice to Condor or Stephen Baron of the Breach and Condor or Stephen Baron (as the case may be) must, within ten (10) business days from the date of receipt of said notice, or on a later date if so determined in the sole discretion of the Department, appear before the Department to demonstrate that no Breach has occurred.

B.      Condor's or Stephen Baron's failure to make the required demonstration within the specified period is presumptive evidence of Condor's or Stephen Baron's Breach.

C.      Upon a finding of Breach, the Department has all the remedies available to it under Dodd-Frank and the New York Banking and Financial Services Laws and may use any and all evidence available to the Department for all ensuing hearings, notices, orders and other remedies that may be available under the Dodd-Frank and the New York Banking and Financial Services Laws.

D.      Upon a finding of Breach, the Department may revoke Condor's license at its sole discretion without notice and a hearing. Condor and Stephen Baron waive any right they may have to challenge the revocation in a proceeding under Article 78 of the New York Civil Practice Law or Rules.

15

## VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Condor and Stephen Baron shall, upon request by the Department, provide all documentation and information reasonably necessary for the Department to verify compliance with this Final Consent Judgment.

## VIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein.

## IX.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Consent Judgment.

## X.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Department may apply to this Court to impose sanctions on any person or entity that violates this Final Consent Judgment.

Dated: 22 December 2014

_____
UNITED STATES DISTRICT JUDGE

16

17

Consented to and
approved for entry by:

DEFENDANT:

_____

Stephen Baron, individually and on
behalf of Condor Capital Corporation

COUNSEL TO DEFENDANT:

_____

Michael Rosensaft
Katten Muchin Rosenman LLP
Attorneys for Defendants
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-6631
Facsimile: (212) 940-8776

ATTORNEY FOR PLAINTIFF
SUPERINTENDENT OF
FINANCIAL SERVICES:

_____

Richard Bettan
Schindler Cohen
100 Wall Street
15th Floor
New York, New York 10005
Telephone: (212) 277-6319
Facsimile: (212) 277-6333