## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

The People of the State of New York, by Attorney General Letitia James; the Commonwealth of Pennsylvania, by Attorney General David W. Sunday, Jr.; State of Colorado, ex rel. Philip J. Weiser, Attorney General, and Martha Fulford, Administrator; Maryland Office of the Attorney General; State of Nevada; State of New Hampshire; State of New Jersey, by Attorney General Jennifer Davenport; State of North Dakota, ex rel. Drew H. Wrigley, Attorney General; State of Oklahoma; State of South Dakota; Commonwealth of Virginia, ex rel. Jay Jones, Attorney General; State of Washington; and State of Wisconsin,

      Plaintiffs,

      v.

OneMain Holdings, Inc.; OneMain Finance Corporation; OneMain Consumer Loan, Inc.; OneMain Financial Holdings, LLC; OneMain Financial Group, LLC; OneMain Financial, Inc.,

      Defendants.

Case No: 1:26-cv-2117 (PAE)

Hon. Paul A. Engelmayer

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO DISMISS OR TO STRIKE
FOR FAILURE TO STATE A CLAIM, IMPROPER VENUE,
AND LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................1

A.   The Court Lacks Jurisdiction Over Claims Based on OneMain's Acts
     Implementing the Consent Order. .............................................................1

B.   The Consent Order Precludes the CFPA Claims. ......................................4

C.   Venue Is Improper for States Other Than New York. ...............................6

D.   Several States Lack Capacity to Sue. .........................................................9

E.   The States Have No Authority to Enforce the Truth in Lending Act. ....10

F.   Counts 13-18 Fail to State a Claim as a Matter of Law. .........................11

G.   The States Fail to Show that They May Recover Civil Money Penalties ..............12

     1.   The States Cannot Recover Penalties under the CFPA. ...........12
     2.   The States May Not Recover Penalties under State Law. ........13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bakenie v. JPMorgan Chase Bank, N.A.*,
2012 WL 4125890 (C.D. Cal. Aug. 6, 2012)..............................................................................2

*New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*,
405 F. Supp. 3d 1233 (D.N.M. 2019) .......................................................................................12

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab.*
*Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................................................10

*Cortez Byrd Chips, Inc. v. Bill Harbert Construction*,
529 U.S. 193 (2000)......................................................................................................................7

*Dubin v. United States*,
599 U.S. 110 (2023)......................................................................................................................8

*FTC v. Uber Techs., Inc.*,
2026 WL 976077 (N.D. Cal. Apr. 10, 2026) ............................................................................10

*Harmon Indus., Inc. v. Browner*,
191 F.3d 894 (8th Cir. 1999) .......................................................................................................5

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)......................................................................................................................7

*Huntington v. Attrill*,
146 U.S. 657 (1892)....................................................................................................................13

*Lawsky v. Condor Cap. Corp.*,
No. 14-cv-02863, Dkt. No. 167 (S.D.N.Y. Dec. 22, 2014) .....................................................12

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979)..................................................................................................................7, 8

*Mumford Cove Ass'n, Inc. v. Town of Groton, Conn.*,
786 F.2d 530 (2d Cir. 1986).........................................................................................................4

*Navajo Nation v. Wells Fargo & Co.*,
344 F. Supp.3d 1292 (D.N.M. 2018) .......................................................................................4-6

*New York by James v. DailyPay, Inc.*,
2025 WL 2695712 (S.D.N.Y. Sept. 19, 2025)............................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*New York by James v. Sirius XM Radio Inc.*,
  735 F. Supp. 3d 272 (S.D.N.Y. 2024)..................................................................9

*Off. of Att'y Gen. v. Berger L. Grp., P.A.*,
  2015 WL 5922933 (M.D. Fla. Oct. 9, 2015) ......................................................12

*Pa. by Shapiro v. Mariner Finance, LLC*,
  711 F. Supp. 3d 463 (E.D. Pa. 2024) ...............................................................7, 11

*Pop v. LuliFama.com LLC*,
  145 F.4th 1285 (11th Cir. 2025) .........................................................................12

*Rex v. Chase Home Fin. LLC*,
  905 F. Supp. 2d 1111 (C.D. Cal. 2012) ................................................................2

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)................................................................................12

*Tenn. ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*,
  2024 WL 4351650 (E.D. Tenn. Sept. 30, 2024)..................................................11

*State Water Control Bd. v. Smithfield Foods, Inc.*,
  542 S.E.2d 766 (Va. 2001)....................................................................................4

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)...............................................................................................6

*Texas v. Ysleta del Sur Pueblo*,
  79 F. Supp. 2d 708 (W.D. Tex. 1999)...................................................................9

*U.S. Cap. Funding VI, Ltd. v. Patterson Bankshares, Inc.*,
  137 F. Supp. 3d 1340 (S.D. Ga. 2015)..................................................................1

*United States v. Federative Rep. of Brazil*,
  748 F.3d 86 (2d Cir. 2014)..................................................................................13

*United States v. Harris*,
  838 F.3d 98 (2d Cir. 2016)..................................................................................11

*In re Vitamins Antitrust Litig.*,
  2001 WL 34088807 (D.D.C. Mar. 13, 2001)......................................................10

*Wilson v. Better Mortg. Corp.*,
  811 F. Supp. 3d 631 (S.D.N.Y. 2025)................................................................12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

12 U.S.C. § 1818.................................................................................................................2

12 U.S.C. § 5536...............................................................................................................11

12 U.S.C. § 5552(a) ............................................................................................... 5-8, 11, 13

12 U.S.C. § 5563............................................................................................................1, 3

12 U.S.C. § 5564........................................................................................................6, 8, 10

12 U.S.C. § 5565........................................................................................................ 11-12

28 U.S.C. § 1391................................................................................................................6

28 U.S.C. § 2467..............................................................................................................13

Colo. Rev. Stat. § 5-9.3-101 ...........................................................................................12

Colo. Rev. Stat. § 5-9.3-108 ...........................................................................................12

Executive Law § 63 ...................................................................................................... 9-10

Nev. Rev. Stat. § 228.380 ...............................................................................................10

Nev. Rev. Stat. § 598.0923 .............................................................................................10

**Other Authorities**

18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,
    FEDERAL PRACTICE AND PROCEDURE § 4458 (3d ed. 2026) .................................. 4-5

Rohit Chopra & Seth Frotman, *State Enforcement as a Federal Legislative Tool*,
    62 HARV. J. ON LEGIS. 1 (2025)...................................................................................5

Local Civ. R. 1.4.1(a).........................................................................................................6

**ARGUMENT**

The States' arguments confirm that the Complaint should be dismissed, for multiple reasons.

**A.    The Court Lacks Jurisdiction Over Claims Based on OneMain's Acts Implementing the Consent Order.**

The States do not dispute that § 5563(d)(2) deprives the Court of jurisdiction over claims seeking relief that would "contravene" a CFPB consent order. But they argue (Opp. 7) that this restriction applies only to claims seeking to alter a consent order's requirements, direct a party to violate it, or prevent the CFPB from enforcing it. That is wrong. Courts lack jurisdiction where, as here, a plaintiff "seeks relief for the defendant's improper practices that are the very conduct giving rise to, and resolved by," a consent order. *U.S. Cap. Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1360 (S.D. Ga. 2015) (collecting cases).

The States point to *Patterson Bankshares*' statement that review may not be barred where a plaintiff "seek[s] relief that is neither *addressed in* nor inconsistent with" a consent order. *Id.* at 1361 (emphasis added). But the relief sought by the States *is* "addressed in" the Consent Order, which expressly identifies and redresses the same alleged practices that the States challenge here.

The States say that "OneMain's employees slip [add-on products] into the loan packages of unsuspecting customers." Opp. 4. The Consent Order alleged that OneMain's "Add-On Sales Practices" include "adding them onto a loan before showing the paperwork to the consumer" and "without verbally informing the consumer that the products were included or optional." Consent Order ¶ 30; *see also id.* ¶¶ 53-60, 62, 66 (stating that these practices violated the CFPA). The States say that OneMain's policy is "to pressure customers to agree to add-ons unless and until the consumer explicitly says 'no' three separate times." Opp. 4. The Consent Order also alleged that OneMain directs employees to attempt to sell add-on products "even when the employees think the consumer will not want them or the consumer previously declined [them] when obtaining a

prior loan." Consent Order ¶ 27. The Order expressly addresses these matters by restricting marketing of add-ons, requiring multiple additional disclosures, including by email and phone, and permitting cost-free cancellation. *Id.* ¶¶ 73, 77-92.

The States say OneMain "obfuscat[es] the add-on disclosures in a flood of fine print." Opp. 4. The Consent Order says that "by engaging in high-pressure sales tactics" and "speeding through written disclosures," OneMain "impede[d] the Customers' ability to understand whether" add-ons were included and whether they were optional. Consent Order ¶ 62; *see id.* ¶¶ 63-66 (stating that these practices violated the CFPA); *id.* ¶¶ 76-79 (requiring numerous "Enhanced Add-On Disclosures"). The States say OneMain "increases and obscures the add-ons' cost" by including them in the loan principal without informing customers and "fail[ing] to mention that add-ons inflate the interest amount." Opp. 4. The Consent Order says OneMain "interfered with consumers' ability to understand that . . . they would be charged interest" on add-on products. Consent Order ¶ 48; *see id.* ¶¶ 76-79 (requiring disclosures related to add-ons' costs). The duplication is obvious.

Moreover, even if the limit on the Court's jurisdiction applied only to claims that contravene the Order, those identified in the Motion (at 6-9) are precluded. That is especially so because the Order's requirements are elaborated in a compliance plan submitted to the CFPB for review (¶ 93)—"ongoing monitoring of defendant's conduct," Opp. 7, that this suit would disrupt. *Bakenie v. JPMorgan Chase Bank, N.A.*, 2012 WL 4125890, at *3 (C.D. Cal. Aug. 6, 2012).[1]

*First*, as the States acknowledge (Opp. 8), the Consent Order expressly prohibits OneMain from selling add-on products without first giving consumers a written loan offer that omits such

---

[1] The States cite (Opp. 7) *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1133 (C.D. Cal. 2012), which said *Bakenie* contained "little reasoning." But *Bakenie* concluded, logically, that where practices were addressed in a consent order and a detailed implementation plan was developed with the federal agency, a complaint challenging the same practices "would 'affect . . . enforcement of [the Consent Order].'" 2012 WL 4125890, at *3 (quoting 12 U.S.C. § 1818(i)(1)).

products. Consent Order ¶ 73(c). Yet the States' complaint calls that precise sequencing a "bait and switch" that misleads consumers. *E.g.*, Compl. ¶ 86. The States argue that OneMain could satisfy the Consent Order by "provid[ing] consumers with information" about add-on products, or even "marketing" add-on products, prior to providing a loan offer without "selling" them. Opp. 8. But that construction of the Consent Order makes no sense in view of the CFPB's concerns regarding OneMain's "marketing, sales, and financing" of add-on products prior to a loan offer. *E.g.*, Consent Order ¶¶ 30-32. The States do not even try to explain the distinction between providing information about these products and selling them: they would place OneMain in the impossible position of risking violating the Consent Order or being penalized for not adopting the States' preferred approach. And this Court cannot police OneMain's compliance with the Consent Order without reviewing or affecting the enforcement of the Order—including the CFPB's oversight through its review of the compliance plan and ongoing monitoring. *See* Mot. 7.

*Second*, for the other two categories of allegations, the States' argument is the same. They dispute neither that the Consent Order, in seven pages, sets out detailed requirements specifying the disclosures that OneMain must make and the cancellation procedures it must provide, Consent Order ¶¶ 76-92, nor that OneMain's implementation of these provisions is subject to the CFPB's review, *id.* ¶¶ 93-95, 127. They simply label the Order's protections "inadequate," arguing that this Court may impose different requirements as long as it does not order OneMain to stop doing something the Consent Order specifically requires. Opp. 8-9. But imposing different requirements would contravene the requirements that the CFPB found sufficient to resolve its CFPA claims against OneMain, and would "affect . . . enforcement" of the Order. 12 U.S.C. § 5563(d)(2).

*Finally*, the Consent Order's statement that it should not be construed to permit OneMain to "violate any law, rule, or regulation" does not authorize the challenged portions of the States'

3

suit here. *Contra* Opp. 9. Our argument is not that OneMain is authorized to violate the law, but rather that, having been required to address specified conduct and implement remedial measures by the CFPB, OneMain cannot now be sued for taking those precise steps—or for not taking others that the States would have preferred to impose—because those claims are jurisdictionally barred.

### B.    The Consent Order Precludes the CFPA Claims.

*Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp.3d 1292 (D.N.M. 2018), held that the Navajo Nation's claims *were* precluded, in circumstances essentially identical to those here. As the court explained, the Nation's "interest in enforcing the CFPA is aligned with that of the CFPB, which understood itself to be acting as a representative of all consumers, including the Nation and its members, when it took [the relevant] enforcement action." *Id.* at 1307. The States assert, with no real explanation, that *Navajo Nation* was "incorrectly decided." Opp. 11.[2] They are wrong.

1. The States assert a virtually per se rule that distinct governmental bodies do not "'represent' one another's interests for purposes of nonparty preclusion." Opp. 10. But the leading treatise (cited by the States, at Opp. 10) recognizes "[p]reclusion *may* flow from [one government] party to [another] … if the relationships established by a special statutory scheme warrant the conclusion … that preclusion is appropriate." 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4458 n.10 (3d ed. 2026) (Wright & Miller). Courts, including the Second Circuit, have endorsed this principle. *E.g.*, *Mumford Cove Ass'n, Inc. v. Town of Groton, Conn.*, 786 F.2d 530, 534-35 (2d Cir. 1986) ("statutory scheme of concurrent federal and state enforcement powers encourages the application of preclusion rules"); *State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 767, 770 (Va. 2001) (same).

---

[2] The States' half-hearted attempt to distinguish *Navajo Nation* misses the mark. They cite differing language in the "release provision[s]" of the *Navajo Nation* consent order. Opp. 13 n.8. But the *Navajo Nation* court did not rely on that provision to hold the order there to be preclusive.

That principle governs here: the CFPA is an example of "cooperative federalism" with the States and the CFPB advancing interconnected goals. Rohit Chopra & Seth Frotman, *State Enforcement as a Federal Legislative Tool*, 62 HARV. J. ON LEGIS. 1, 5 (2025). Thus, § 5552(b)(1)(A) provides that a State AG must generally provide advance "written notice" to the CFPB "[b]efore initiating any action in a court" to enforce the CFPA. The notice must be accompanied by "a copy of the complete complaint to be filed" and discuss any "need to coordinate the … [state] proceeding so as not to interfere with" the Bureau's activities. 12 U.S.C. § 5552(b)(1)(A) & (C)(iii); *see also id.* § 5552(b)(2) (CFPB right to intervene in State action).

Taken together, these provisions confirm that a State effectively stands in federal shoes when it acts to enforce the CFPA. *See Navajo Nation*, 344 F. Supp. 3d at 1307 (discussing some of the above-cited provisions). The statute "provides the framework for the party identity analysis," *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999), and, here, establishes that the CFPB action "has the same force and effect as an action initiated by [the States]" because "the two parties represent the same legal right," *id.*; *see also* Wright & Miller § 4458 (citing *Harmon* with approval). The States' CFPA claims invoke the same federal statute, prohibit the same conduct, and protect the same consumers as the CFPB's enforcement action. Mot. 9-14. Indeed, the States do not even try to articulate what independent sovereign interests they would advance by bringing claims under a federal statute where the primary enforcer of that statute, the CFPB, has already resolved such claims for their citizens. Consequently, privity exists and claim preclusion applies.[3]

---

[3] The States rely (Opp. 10-12) on a host of decisions, but all are inapposite. Most do not address *res judicata* principles at all; those that do for the most part involve different claims under different laws. None involves the facts here: conduct addressed by a final decision entered in a federal agency action that is followed by State claims targeting the same conduct under the same federal statute, which gives the federal agency special oversight status with respect to State actions.

5

2. The States' remaining *res judicata* contentions are incorrect. *First*, the States are wrong to deny that the CFPB meant to represent state interests in its OneMain enforcement proceeding (Opp. 12); as OneMain showed (Mot. 13), "the CFPB[] understood itself to be acting as a representative of all consumers," *Navajo Nation*, 344 F. Supp. 3d at 1307-08, an interest precisely aligned with that of the States. Moreover, the States wholly disregard that preclusion is appropriate when "the original court took care to protect the interests of the nonparty." *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008). Here, there is no doubt that the original tribunal (the CFPB) took care to protect the interests of all consumers—which, again, is the States' professed interest. Mot. 13.

*Second*, the States are wrong to assert (Opp. 12-13 & n.8) that Paragraph 131 of the Order shows that the CFPB did not intend to preclude state actions. The Order reflects a clear intent to bar CFPA actions by other entities based on the conduct described in the Order. Mot. 13-14.

**C.      Venue Is Improper for States Other Than New York.**

***The CFPA's plain text limits each AG to courts in her own State.*** The States rely on § 5552(a)(1) as the provision "empower[ing] the States to enforce the CFPA," Opp. 22, but it directs that a State AG may do so by suing "in any district court of the United States *in that State*," 12 U.S.C. § 5552(a)(1) (emphasis added). The States claim that, because the venue provision says "may" rather than "must," it should be ignored, and the Court should default instead to the general venue statute (28 U.S.C. § 1391) or the CFPB's venue provision (12 U.S.C. § 5564(f)).

That ignores the plain text. The word "may" in § 5552(a) *grants permission* to State AGs to enforce the CFPA ("may bring a civil action"), which they would otherwise not possess, and the clauses that follow ("in any district court … in that State") *define the scope* of that permission. This verb-phrase structure—a permissive "may [verb]" with subsequent qualifying phrases—is commonly used: if a law student "may … appear on behalf of any person who has consented in writing," S.D.N.Y. Local Civ. R. 1.4.1(a), she may not appear without consent.

6

The States respond with a block quotation from *Pa. by Shapiro v. Mariner Finance, LLC*, 711 F. Supp. 3d 463 (E.D. Pa. 2024), concluding that "the word 'may' is generally permissive." Opp. 17. But that proves nothing. The AGs "may," permissively, "bring a civil action" that they otherwise could not, 12 U.S.C. § 5552(a)(1)—but *may not* do so in any court they please. In *Cortez Byrd Chips, Inc. v. Bill Harbert Construction*, the Supreme Court warned against exactly this kind of shortcut logic, explaining that in a venue provision, "the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." 529 U.S. 193, 198 (2000). Rather, an "analysis of special venue provisions must be specific to the statute." *Id.* at 204. As explained above, the States' position cannot survive such analysis. *See also* Mot. 18.

***The plain reading of § 5552(a)(1) does not create a "venue gap."*** The States contend that the CFPA's special venue provision would leave some AGs with "*no* jurisdiction in which to sue." Opp. 20 (emphasis in original). Their hypothetical cannot withstand scrutiny: it is unclear why a State AG would sue a defendant that does no business and does not market to consumers in her own State. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (a State may not regulate "commerce that takes place wholly outside of the State's borders"). Tellingly, the States fail to offer a single example where a State's long-arm statute would not reach a claim that the AG wants to (and otherwise may) pursue—and in any event, that hypothetical restriction would result from a choice by the State's legislature to restrict AG enforcement authority, not a decision by Congress.

***The "key aims" of § 5552(a)(1) are upended by the States' approach.*** Pointing to what they call "venue law's key aims," the States suggest they should be permitted their preferred venue because multistate actions are "convenien[t]" and "efficien[t]." Opp. 20-21. Their leading case holds the opposite: If a *defendant* prefers the supposed convenience of a consolidated proceeding, it may choose "to waive valid objections to otherwise improper venue." *Leroy v. Great W. United*

*Corp.*, 443 U.S. 173, 184 (1979). But, the Supreme Court held, "that concern does not justify reading the statute to give the plaintiff the right to select the place of trial that best suits his convenience." *Id.* Moreover, Congress made its purpose clear by rejecting a provision, passed by the House, that would have allowed State AGs to join together in multistate actions. Mot. 19.

The States are correct that the restrictive, "any district court … in that State" phrasing was included already in § 5552(a)(1) of the Senate version of the CFPA before the Carper Amendment was introduced. But the critical point is the Senate twice made clear—through changes in the legislative text—that this phrase had a meaning different from the House-passed bill's broad, "any district court … having jurisdiction" language. First, the Senate replaced the House-passed language in § 5552(a)(1). Second, it adopted the Carper Amendment to insert the very same language in § 5552(a)(2), which governs State AGs' ability to enforce the CFPA against national banks. Senator Carper's proposal was a middle-ground "compromise," allowing State AGs to "enforce" the CFPB's regulations "*in their own State.*" Mot. 19 (emphasis added).

The States' construction makes the Senate's changes meaningless: an AG could sue in "any district court … having jurisdiction" notwithstanding the Senate's restrictive language. It would permit multistate AG actions against national banks—the same phrase in the same provision could not be interpreted differently—precisely what the Carper Amendment was adopted to prohibit.

***Section 5564(f) is the Bureau's venue provision, not the States'.*** The States' last resort is to point to another venue provision in the CFPA, 12 U.S.C. § 5564, a section titled "Litigation authority" in a part titled "Enforcement Powers," both of which provide the terms of the *CFPB's* authority, not the States'. Although a heading cannot "override the plain words" of a statute, it is a "'tool[] available for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023). If there were any doubt (there is not), the headings resolve it.

8

### D.    Several States Lack Capacity to Sue.

The States claim that AGs were "empower[ed]" by Congress "to enforce the CFPA." Opp. 22. Congress can create a cause of action, but it cannot "empower" state officials. "The burden of proof rests with the AG to identify a source of power authorizing him to exercise this [federal right] on behalf of the state." *Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708, 714 (W.D. Tex. 1999), *aff'd*, 237 F.3d 631 (5th Cir. 2000). Several States lack that authority. Mot. 21-27.

***New York's AG has no statutory or common law power to assert CFPA claims.*** New York's AG invokes (Opp. 23-24) Executive Law § 63(12). That statute authorizes the AG to "apply … to the supreme court of the state of New York" for an order enjoining "fraudulent or illegal acts" and "directing restitution and damages." It thus creates a state-law cause of action for violations of federal law. Indeed, New York's AG has vigorously and successfully told this Court multiple times in recent years that claims arising under § 63(12) are *state-law* claims that belong in New York state court, even when they allege a violation of federal law. *New York by James v. DailyPay, Inc.*, 2025 WL 2695712, at *4 (S.D.N.Y. Sept. 19, 2025) (collecting cases);[4] *see New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 281-82 (S.D.N.Y. 2024). Moreover, § 63(12) by its terms authorizes only an expedited special proceeding in New York state court under New York CPLR article 4, not an action cognizable in federal court.

New York does not claim common law power to invoke the CFPA; that argument is waived.[5] It observes that it has joined CFPA cases before but, to counsel's knowledge, New York's

---

[4] New York's motion to remand argued that "[§ 63(12)] and CFPA claims are distinct," and § 63(12) claims "are not and could never have been asserted under federal law." Ex. A, *New York by James v. DailyPay, Inc.*, No. 1:25-cv-3439, ECF No. 14 at 10 (S.D.N.Y. May 12, 2025).

[5] New York invokes Executive Law § 63(1), but that longstanding provision, *see* 1 Revised Statutes of the State of New York 179 (Albany, Packard & Van Benthuysen 1829), designates the AG as the State's principal representative in court and has never been understood to confer substantive authority to litigate any civil claim the AG chooses. Such an interpretation is precluded

9

capacity to sue under the CFPA has never been challenged—probably because in most past actions the CFPB was a co-plaintiff. That does not mean the New York AG *has* that power.

***Nevada's AG has no authority to enforce federal law directly.*** The statutes cited by Nevada, Nev. Rev. Stat. §§ 598.0923(1)(c), 228.380, like New York's § 63(12), incorporate federal law liability standards into Nevada's state-law deceptive trade practices framework.

***Pennsylvania and Wisconsin failed to allege their supposed authorization to sue.*** States must include in their complaint allegations establishing their authority to sue. *See In re Vitamins Antitrust Litig.*, 2001 WL 34088807, at *3 (D.D.C. Mar. 13, 2001) (dismissal granted because, "[b]ased on the pleadings before the Court, there is no evidence that plaintiff has sought and obtained approval from the Governor to bring this action through private counsel"). The States cite *FTC v. Uber Techs., Inc.*, 2026 WL 976077 (N.D. Cal. Apr. 10, 2026), where the FTC failed to allege that it provided a required notice to the Attorney General, and the court denied a motion to dismiss. But as the same court held in another case, "a failure to notify the attorney general is not the same thing as a failure to get approval from the attorney general." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1017 n.22 (N.D. Cal. 2018) (dismissing claims where complaint failed to allege required state AG approval).

E.    **The States Have No Authority to Enforce the Truth in Lending Act.**

OneMain explained (at 15-17) that § 5552(a) expressly leaves unchanged the States' ability to enforce other consumer laws like TILA, and it is undisputed that TILA confers no relevant

---

by (1) the decisions limiting the AG's authority (Mot. 22-23), which would be wrongly decided under New York's view of § 63(1) because New York's contention is that the statute authorizes the AG to assert any cause of action as long as the State has an "interest"; (2) multiple subsequent provisions in § 63 that would be made superfluous (subdivisions 9, 11) or negated (subdivision 15); and (3) the Legislature's decision to enact a state-law consumer protection enforcement action with provisions different from the CFPA, and not authorize suits under the CFPA, determinations that independently bar the AG from bringing this action, Mot. 23-24.

10

enforcement authority on States. The States note (Opp. 13-14) that the CFPA's separate definition of a "Prohibited Act[]" in 12 U.S.C. § 5536(a)(1)(A) includes the violation of "enumerated consumer laws," including TILA. They claim that provision grants authority to "bring a civil action against any covered person or service provider that violates TILA." Opp. 14. But—as the CFPB has now recognized—that reading cannot be squared with § 5552(a)'s text, including its Rule of Construction disclaiming any effect on States' ability to enforce other laws. Mot. 15-16.

The States' only response (Opp. 14-15) is to invoke the strained reading offered in *Mariner*, 711 F. Supp. 3d at 482-84, that "modify[]" in the Rule of Construction should be read to mean *restrict*. But that is not what the statute says and would render "modify" superfluous of "limit," even though the statute's use of the disjunctive "or" indicates that the terms must be given separate meanings. *See United States v. Harris*, 838 F.3d 98, 105 (2d Cir. 2016). The States' claim (Opp. 15) that a provision on recovery of costs, 12 U.S.C. § 5565(b), expands the States' enforcement authority notwithstanding the Rule of Construction is even further afield. And their appeal to legislative history (Opp. 14) cannot support a reading contrary to the statute's plain terms.[6]

### F.  Counts 13-18 Fail to State a Claim as a Matter of Law.

***Maryland, Nevada, and New Jersey.*** Attempting to evade their pleading burden, the States now assert that they need not prove "scienter, reliance, or injury." Opp. 27. But their pleading (and their opposition brief) contend that OneMain constructed a "scheme," Opp. 1, with vague allegations of all three. Compl. ¶¶ 17-18, 103, 119, 187-93, 199, 201-10 (scienter); *id.* ¶¶ 121, 127, 158, 189, 191, 275, 286, 289 (reliance); *id.* ¶¶ 1-5, 24, 104, 211-19, 276-79, 294-98 (injury). Having made allegations "sounding in fraud," they should be held to the requisite pleading

---

[6] *Tenn. ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*, 2024 WL 4351650 (E.D. Tenn. Sept. 30, 2024), involved TILA claims by States, but the authority issue was not raised. *See id.* at *13-15.

standards. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *see also, e.g.*, *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293-94 (11th Cir. 2025).

*Colorado.* Colorado law prohibits a GAP insurer from refusing to honor a claim because a customer's outstanding loan balance dwarfs the value of her car. Mot. 29. Colorado argues that if a customer has more than 50% negative equity on her car loan, she is not eligible to buy GAP insurance at all. Opp. 30-31. That reading is counter-textual and nonsensical. It conflates a "GAP agreement" with its underlying "finance agreement," which the statute treats as distinct things. Colo. Rev. Stat. § 5-9.3-101(1), (4)(a); *id.* § 108(1)(b–d). It overlooks the word "maximum" altogether. And, while Colorado suggests the literal reading of the statute "makes no sense," Opp. 31 n.24, it is Colorado's reading that would withhold GAP insurance from customers who need it most—those who would be most exposed in the event of a total loss of their vehicle.

### G.  The States Fail to Show that They May Recover Civil Money Penalties.

The States assert it is "procedurally premature" to strike the request for civil penalties, Opp. 31, but their own case states that the Court may do so when, as here, "such relief is categorically unavailable," *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 645 (S.D.N.Y. 2025).

### 1.  The States Cannot Recover Penalties under the CFPA.

The States assert that "[m]ultiple courts have recognized the authority of state AGs to recover civil penalties under the CFPA," Opp. 31, but none of their cases address the issue. *New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 405 F. Supp. 3d 1233, 1238-39 (D.N.M. 2019) (addressing sufficiency of discovery responses); *Off. of Att'y Gen. v. Berger L. Grp., P.A.*, 2015 WL 5922933, at *1 (M.D. Fla. Oct. 9, 2015) (entering default judgment); *Lawsky v. Condor Cap. Corp.*, No. 14-cv-02863, Dkt. No. 167 (S.D.N.Y. Dec. 22, 2014) (entering final consent judgment).

The CFPA requires CFPB action for an award of civil penalties. 12 U.S.C. § 5565(c)(5); Mot. 29-30. The Court should enforce that requirement and strike the claim for CFPA penalties.

## 2.    The States May Not Recover Penalties under State Law.

Federal courts may not enforce state penal laws. Mot. 30-32. The States' arguments fail.

*First*, the States assert (Opp. 32-33) that the penal-law rule is overridden by 12 U.S.C. § 5552(a)(1). That provision permits States to bring an action "in any district court of the United States *in that State*" "to secure … remedies otherwise provided under other law" (emphasis added), on its face barring all of the penalty actions other than New York's. Also, there is no congressional consent: the Second Circuit decision the States invoke says that "[a] common law principle, such as the penal law rule, may be abrogated by statute, *provided the statute speaks directly to the point addressed by the common law*," citing as an example 28 U.S.C. § 2467(a)(2), which expressly refers to "forfeiture or confiscation." *United States v. Federative Rep. of Brazil*, 748 F.3d 86, 95-96 (2d Cir. 2014) (emphasis added). The CFPA's nonspecific reference to "remedies otherwise provided under other law" does not similarly "speak[] directly to the" penal law rule.

*Second*, the Supreme Court expressly rejected the contention (Opp. 33) that the rule is limited to criminal sanctions. *See* Mot. 30-31. Monetary sanctions are penal when imposed to punish, not for compensation or remediation of harm, even if awarded in a civil action. The States dismiss *Kokesh v. SEC*, 581 U.S. 455 (2017), as "not about the penal law rule," Opp. 33 n.25, but the Court there based its determination that the civil penalties were "penal" on *Huntington v. Attrill*, which applied the penal-law rule. 581 U.S. at 461-63. The States' claim that consumer protection laws are categorically excluded makes no sense, and is not supported by any authority.

The States invoke *Hendrickson*'s exclusion of penalties that are "civil in nature," Opp. 33, but that statement contradicts clear Supreme Court and Second Circuit authority without even acknowledging them. Mot. 31 n.8.

\*    \*    \*

For the foregoing reasons, and those in the Motion, the Complaint should be dismissed.

13

Respectfully submitted,

/S/ Ryan T. Scarborough
Ryan T. Scarborough
Joseph M. Terry
Suzanne M. Salgado
WILLIAMS & CONNOLLY LLP
650 Fifth Avenue, Suite 1500
New York, NY 10019
(202) 434-5000
rscarborough@wc.com
jterry@wc.com
ssalgado@wc.com

*All appearing pro hac vice*

/S/ Andrew J. Pincus
Andrew J. Pincus (*pro hac vice*)
Charles A. Rothfeld (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC
(202) 263-3000
apincus@mayerbrown.com
crothfeld@mayerbrown.com

Benjamin D. Bright
1221 Avenue of the Americas
MAYER BROWN LLP
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Counsel for Defendants*

July 6, 2026

14

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by

electronic transmission to all registered ECF users appearing in the case on July 6, 2026.

/s/ Andrew J. Pincus
Andrew J. Pincus