# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York,

                Petitioner,

       - against -

DAILYPAY, INC.,

                Respondent.

Case No. 25 Civ. 3439

---

## <u>MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO REMAND</u>

LETITIA JAMES
Attorney General of the
State of New York

Christopher L. Filburn
Assistant Attorney General
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, New York 10005
212.416.8303

*Counsel for Petitioner*
*People of the State of New York*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

I.      THE SPECIAL PROCEEDING FILED BY NEW YORK ESTABLISHES THAT
        DAILYPAY ENGAGED IN USURIOUS, DECEPTIVE, AND ABUSIVE
        LENDING ................................................................................................. 3

II.     PROCEDURAL HISTORY ......................................................................... 6

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ...................................................................................................... 8

I.      THE PETITION ASSERTS NO CLAIM CREATED BY FEDERAL LAW ..................... 9

II.     DAILYPAY CANNOT SATISFY ITS BURDEN TO ESTABLISH THAT THIS
        COURT HAS "SUBSTANTIAL QUESTION" JURISDICTION ................................. 11

        A.      DailyPay Does Not Identify any Federal Question that Is Actually in Dispute ... 12

        B.      The Petition Raises No Substantial Federal Question; It Merely Applies
                Federal Prohibitions to Specific Facts and Raises Key Matters of State Law ...... 13

        C.      Removal Will Disrupt the Balance of Federal and State Judicial
                Responsibilities While Remand Will Promote Federalism and Comity ............... 17

CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
   37 N.Y.3d 320 (2021) ........................................................................................ 18

*Adigun v. IRS*,
   No. 20 Civ. 3676, 2021 WL 4709751 (S.D.N.Y. Jul. 27, 2021) ..................................... 20

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
   --- F.4th ---, 2025 WL 1241844 (2d Cir. Apr. 30, 2025) ........................................... 11, 17

*Bernstein Family Ltd. P'ship v. Sovereign Partners, L.P.*,
   66 A.D.3d 1 (N.Y. App. Div. 2009) ........................................................................ 4

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*,
   No. 14 Civ. 9367, 2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018) ................................... 16n

*Broder v. Cablevision Systems Corp.*,
   418 F.3d 187 (2d Cir. 2005)................................................................................... 11

*Caggiano v. Pfizer, Inc.*,
   384 F. Supp. 2d 689 (S.D.N.Y. 2005)..................................................................... 16n

*CFPB v. Access Funding, LLC*,
   No. 16 Civ. 3759, 2021 WL 2915118 (D. Md. Jul. 12, 2021) ....................................... 16

*CFPB v. ITT Educ. Servs.*,
   219 F. Supp. 3d 878 (S.D. Ind. 2015) ...................................................................... 15

*CFPB v. NDG Fin. Corp.*,
   No. 15 Civ. 5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016)..................................... 15

*City of New Rochelle v. Town of Mamaroneck*,
   111 F. Supp. 2d 353 (S.D.N.Y. 2000)....................................................................... 19

*Davidson v. Capuano*,
   792 F.2d 275 (2d Cir. 1986).................................................................................... 19

*Fracasse v. People's United Bank*,
   747 F.3d 141 (2d Cir. 2014) (*per curiam*) ................................................................ 13

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
   463 U.S. 1 (1983).................................................................................................. 8

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
   545 U.S. 308 (2005)......................................................................................... *passim*

*Gunn v. Minton*,
568 U.S. 251 (2013)................................................................................................*passim*

*In re G.M. LLC Ignition Switch Litig.*,
69 F. Supp. 3d 404 (S.D.N.Y. 2014)................................................................ 16n, 18, 20

*In re Standard & Poor's Rating Agency Litig.*,
23 F. Supp. 3d 378 (S.D.N.Y. 2014)............................................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................................................................................................... 7

*NASDAQ OMX Group v. UBS Secs., LLC*,
770 F.3d 1010 (2d Cir. 2014)..................................................................................... 9, 11

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012) ......................................................................................... 8

*Pennsylvania v. Think Finance, Inc.*,
No. 14 Civ. 7139, 2019 WL 6217376 (E.D. Pa. Nov. 20, 2019)............................... 15, 16

*People v. Amazon.com, Inc.*,
550 F. Supp. 3d 122 (S.D.N.Y. 2021)........................................................................... 15

*People v. Apple Health & Sports Clubs*,
80 N.Y.2d 803 (1992) ................................................................................................... 10

*People v. Apple Health & Sports Clubs, Ltd., Inc.*,
206 A.D.2d 266 (N.Y. App. Div. 1994) ......................................................................... 3

*People v. Citibank, N.A.*,
No. 24 Civ. 659, 2025 WL 251302 (S.D.N.Y. Jan. 21, 2025)......................................... 9

*People v. Dell*,
514 F. Supp. 2d 397 (N.D.N.Y. 2007).................................................................... 18, 19

*People v. Juul Labs, Inc.*,
No. 452168/2019, 2022 WL 2473459 (N.Y. Sup. Ct. July 5, 2022) ............................... 9

*People v. Sirius XM Radio Inc.*,
735 F. Supp. 3d 272 (S.D.N.Y. 2024)....................................................................*passim*

*People v. Telehublink Corp.*,
301 A.D.2d 1006 (N.Y. App. Div. 2003) ....................................................................... 4

*People v. Two Wheel Corp.*,
71 N.Y.2d 693 (1988) ................................................................................................... 10

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013)................................................................................ 7

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020)........................................................ 14, 17

*Rubin v. MasterCard Int'l, LLC*,
    342 F. Supp. 2d 217 (S.D.N.Y. 2004)................................................................ 7

*Smith v. Kansas City Title & Tr. Co.*,
    255 U.S. 180 (1921)........................................................................................ 13

*State v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) ......................................................................... 9, 10

*State v. Scottish-Am. Ass'n, Inc.*,
    52 A.D.2d 528 (N.Y. App. Div. 1976) .............................................................. 9

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., Inc.*,
    116 F.4th 106 (2d Cir. 2024) ....................................................... 8, 11, 13, 15

*Wullschleger v. Royal Canin USA, Inc.*,
    953 F.3d 519 (8th Cir. 2020) ........................................................................ 11

*Young v. New York City Transit Auth.*,
    903 F.2d 146 (2d Cir. 1990)........................................................................... 19

**STATUTES**

12 U.S.C. § 5481.................................................................................................... 17

12 U.S.C. § 5531.............................................................................................. 10, 12

12 U.S.C. § 5552.............................................................................................. 14, 18

12 U.S.C. § 5564.................................................................................................. 10

28 U.S.C. § 1441.................................................................................................... 7

28 U.S.C. § 1446.................................................................................................... 7

28 U.S.C. § 1447................................................................................................. 3, 9

N.Y. Exec. Law § 63(12)................................................................................. 10, 19

**RULES & REGULATIONS**

CPLR § 213........................................................................................................... 10

CPLR § 409............................................................................................................ 4

CPLR § 410............................................................................................................ 4

**OTHER AUTHORITIES**

Cal. Dep't of Fin. Protection & Innovation,
    *2021 Earned Wage Access Data Findings* (2023).......................................................... 16n

Consumer Fin. Protection Bureau,
    *Data Spotlight: Developments in the Paycheck Advance Market* (Jul. 18, 2024) .......... 16n

## INTRODUCTION

Petitioner is the People of the State of New York, as represented by Letitia James and the New York State Office of the Attorney General (the "OAG"). The OAG initiated this special proceeding on behalf of a sovereign state, in the courts of that state, asserting exclusively state-law claims against a company located in the state, using a specific state procedural mechanism that has no federal analogue. This special proceeding belongs in state court, where it was filed.

On April 14, 2025, the OAG filed a Verified Petition and supporting affidavits, testimony, and records, in New York state court. (ECF No. 1-1 (the "Petition," cited herein as "Pet. ¶ __").) The Petition names DailyPay, Inc., now DailyPay, LLC ("DailyPay" or "the Company"), as Respondent. DailyPay operates a lending program in New York through which it makes small-dollar, short-term loans to New York workers, referred to as Paycheck Advances, and repays itself via paycheck deductions. The Petition sets forth how DailyPay's lending program charges exorbitant fees—its typical loans impose costs equivalent to 200% to 750% annualized percentage rate, or APR—which render DailyPay's takings illegal and its lending usurious under state law. Yet DailyPay falsely advertises "interest free" loans, deceptively promotes "no cost" immediate funds, and promises illusory financial benefits. The Petition also establishes that the Company's abusive business model generates the bulk of its profits from workers whose reduced paychecks make them utterly dependent on repeat borrowing, racking up hundreds of dollars in interest annually. The special proceeding was brought under New York's Executive Law § 63(12), which authorizes the OAG to apply to New York courts for injunctive and monetary relief.

On April 24, 2025, DailyPay improperly removed the OAG's Petition to this Court under 28 U.S.C. §§ 1331, 1367, 1441, and 1446, taking the position that the Court has original federal question jurisdiction over this special proceeding. The Company's removal is based entirely on its assertion that the Court has jurisdiction because the Petition presents a federal question.

DailyPay is wrong. The Petition asserts eight causes of action created by state law that concern DailyPay's costly and abusive lending program in New York. The first three causes of action assert that the lending program violates state usury and wage assignment laws. The fourth cause of action asserts that DailyPay violated New York's false advertising prohibitions. The fifth, sixth, and seventh causes of action, all arising under Executive Law § 63(12), assert that DailyPay engaged in fraudulent and deceptive practices when lending in New York, while the eighth cause of action, also arising under Executive Law § 63(12), asserts that DailyPay engaged in abusive practices in connection with its offering of Paycheck Advances to workers in New York.

DailyPay's contention is that because the OAG's seventh and eighth causes of action under Executive Law § 63(12) are premised on the Company's repeated and persistent deceptive and abusive practices, as prohibited by the federal Consumer Financial Protection Act (the "CFPA"), 12 U.S.C. § 5481 *et seq.*, this Court has original jurisdiction. But as is plain from the face of the Petition, the OAG's claims are creatures of state law—not federal law. And DailyPay's argument to the contrary was squarely foreclosed by the Second Circuit less than two years ago.

DailyPay therefore must attempt to squeeze this proceeding into the "special and small" category of cases in which removal jurisdiction exists "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). DailyPay cannot carry its burden to do so, for at least three reasons:

*First*, while DailyPay identifies a federal law—the CFPA—it identifies no dispute about that law's scope, meaning, or application here that might warrant federal court intervention.

*Second*, DailyPay cannot establish that this proceeding raises a substantial federal question, which does not require a substantial issue for the parties but for the federal system itself. Congress

2

has *expressly provided* that state courts are appropriate forums for state attorneys general, such as the OAG here, to enforce the CFPA's prohibitions on deceptive or abusive conduct, undermining any need for federal court intervention. And the issues implicated under the CFPA are entirely fact-bound and specific to DailyPay, rendering them insignificant to the federal system. Indeed, the *only* crucial and novel questions of law in this proceeding are whether the Paycheck Advances and associated fees are loans and interest under *New York law*—as DailyPay has conceded—resolution of which will merely affect future lending practices *in New York alone*.

*Third*, removal of this special proceeding plainly would disrupt the proper balance of state and federal judicial responsibility. Congress deemed the state court an appropriate forum. New York itself is the Petitioner. The claims were created by New York, concern New York's centuries' old public policies against usury, and raise novel issues of New York law. And the vehicle is a specific New York procedural mechanism afforded to the OAG for expedited resolution.

For all these reasons, the Court should promptly remand this special proceeding to New York Supreme Court, where the OAG properly filed it. *See* 28 U.S.C. § 1447(c).

**BACKGROUND**

**I.      THE SPECIAL PROCEEDING FILED BY NEW YORK ESTABLISHES THAT DAILYPAY ENGAGED IN USURIOUS, DECEPTIVE, AND ABUSIVE LENDING**

New York has a public policy of protecting its residents from business practices that are fraudulent, deceptive, or illegal. The OAG, on behalf of the People of the State of New York, is charged with enforcing that policy, codified at Executive Law § 63(12). New York's legislature has authorized Executive Law § 63(12) actions to be brought by special proceeding, which is "intended as an expeditious means for the Attorney General to prevent further injury and seek relief for the victims of business fraud." *People v. Apple Health & Sports Clubs, Ltd., Inc.*, 206 A.D.2d 266, 268 (N.Y. App. Div. 1994). Special proceedings are "brought on with the ease, speed,

3

and economy of a mere motion." *Bernstein Family Ltd. P'ship v. Sovereign Partners, L.P.*, 66 A.D.3d 1, 8 (N.Y. App. Div. 2009) (quotations omitted). They are governed by Article 4 of New York's Civil Practice Law and Rules, which requires a court to make a summary determination upon the pleadings, papers, and admissions, akin "to a motion for summary judgment." *People v. Telehublink Corp.*, 301 A.D.2d 1006, 1007 (N.Y. App. Div. 2003); CPLR § 409(b); *see also* CPLR § 410 (providing that issues of material fact must be tried "forthwith").

On April 14, 2025, the OAG filed a special proceeding in New York Supreme Court. The Petition, supporting affidavits, testimony, and attached records show that DailyPay makes short-term, small-dollar Paycheck Advances to working-class New Yorkers. (*See generally* Pet. ¶¶ 16–21.) To do so, DailyPay contracts with employers to be their exclusive lender and to assist the Company in touting its lending program. (Pet. ¶¶ 18, 32–36.) DailyPay advertises its program to employers through newsletters and other messages asserting that it will boost worker recruitment and retention. (Pet. ¶¶ 23–27.) DailyPay then partners with employers to promote Paycheck Advances to their workers by highlighting free enrollment and on-demand funds (Pet. ¶¶ 38–46) and claiming that the loans will improve workers' financial wellbeing (Pet. ¶¶ 28–29).

The Paycheck Advances offered by DailyPay in New York are expensive. The Company's median Paycheck Advance is for roughly $75 and a $2.99 fee, to be repaid in eight days, reflecting an APR of nearly 200%. (Pet. ¶ 54.) Its most common transaction—a seven-day, $20 Paycheck Advance with a fee—carries an APR of more than 750%. (Pet. ¶ 54.) Overall, DailyPay extracted more than $27 million in fees from New York workers' wages from October 1, 2020 to December 31, 2024 (Pet. ¶ 55), with more than nine out of every ten fee-based loans carrying an APR above 50% and more loans with an APR above 1,000% than below 50% (Pet. ¶¶ 59–60):

4



DailyPay obtains assignments of workers' wages as collateral for its Paycheck Advances in amounts sufficient to ensure profitability. (Pet. ¶¶ 53, 67.) The Company uses payroll data to make loans it knows it will recoup (Pet. ¶ 65), while workers must consent to having their paychecks sent to DailyPay and to support collection efforts (Pet. ¶¶ 67–68, 85–88). Meanwhile, the Company engages in extensive credit underwriting of employers (*See* Pet. ¶¶ 70–83) and retains the ability to take legal action against them if needed (Pet. ¶ 84).

These credit and collateral practices act as a guarantee: DailyPay collected on more than 99.90% of all amounts owed during the period covered by the Petition. (Pet. ¶ 92.)

While DailyPay collects every dollar that it lends, plus all fees, New Yorker workers are rendered dependent: they obtain one or more Paycheck Advances, receive smaller paychecks, and soon need more loans. (*See* Pet. ¶ 94.) This activity is nudged along by DailyPay through balance updates that prompt workers to take out additional loans. (Pet. ¶¶ 109–12.) DailyPay touts worker dependency to its investors, claiming that it will extract hundreds of dollars from workers each year. (Pet. ¶¶ 98–101.) The results are staggering: More than 75% of the Company's revenue comes from less than half of all enrolled workers, each of whom obtain more than two Paycheck

Advances *each week* on average. (Pet. ¶ 103.) And many New Yorkers become wholly dependent on Paycheck Advances, taking out a new loan *every other day or more*. (Pet. ¶ 104.) In short, DailyPay is extracting millions of dollars annually from thousands of New York workers by pushing them into entirely unsustainable financial behavior. (Pet. ¶ 106–08.)

The Petition asserts eight claims, each based on DailyPay's repeated and persistent fraud or illegality in violation of New York's Executive Law § 63(12). (*See* Pet. ¶¶ 113–47.) The Petition asserts that DailyPay lent money at APRs in excess of state limits in violation of New York's wage assignment and usury laws. (Counts I–III.) The Petition asserts that DailyPay falsely advertised "no interest" Paycheck Advances in violation of New York's false advertising law. (Count IV.) The Petition asserts that DailyPay deceptively advertised these same "no interest" promises, created misleading impressions about the ability to obtain immediate funds at no cost, and inaccurately promoted improved financial well-being, in violation of New York law and the CFPA. (Counts V–VII.) And the Petition asserts that DailyPay materially interfered with workers' ability to understand the terms of Paycheck Advances, took unreasonable advantage of workers' inability to protect their interests when obtaining Paycheck Advances, and took unreasonable advantage of workers' reasonable reliance on their employers, in violation of the CFPA. (Count VIII.)

## II.     PROCEDURAL HISTORY

Before the OAG initiated this special proceeding, DailyPay sued in this Court in an action captioned *DailyPay, LLC v. Attorney General Letitia James*, No. 25 Civ. 2849 (S.D.N.Y.). The Company's preemptive suit was proceeded by the OAG sending to DailyPay a statutory pre-litigation notice "asserting that DailyPay's product is a loan that violates state usury laws and wage assignment laws." (Complaint ¶ 34, *DailyPay v. James*, ECF No. 1 (cited herein as the "DP Compl. ¶ __") The original five-day notice period was extended on several occasions, but after the period expired on April 4, 2025, DailyPay preemptively filed suit the next business day. (*Id.*)

DailyPay's preemptive suit could not make clearer that the substantial disputes between the OAG and DailyPay all concern state—not federal—law. The Company's complaint seeks a declaratory judgment that a Paycheck Advance "is not a loan under New York law." (*Id*. ¶ 9.) Its sole count first alleges that "DailyPay's product does not constitute a loan under New York law." (*Id*. ¶ 68.) It contains a lengthy legal argument section that cites extensively from precedent applying New York law. (*See id*. ¶¶ 37–50.) And even in its (very brief) section on federal law, DailyPay expressly acknowledges that the violations of the CFPA "***all depend*** on the OAG's flawed assumption that DailyPay's ODP product ***is a loan***." (¶ 52 (emphasis added).)

The OAG initiated this special proceeding one week after the preemptive suit. DailyPay subsequently removed this proceeding under 28 U.S.C. §§ 1441 and 1446 (Notice of Removal, ECF No. 1 (cited herein as "Notice ¶ __")), which was accepted by this Court as related to the preemptive suit. The Court subsequently granted the parties' joint request to suspend responsive deadlines while the OAG moves to remand. (ECF No. 9.) This motion now follows.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under the removal statute, an action filed in state court may be removed only if "the district courts of the United States have original jurisdiction" over it. 28 U.S.C. § 1441(a). And "in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quotations omitted). The removing party—DailyPay—bears the burden of proving jurisdiction. *Rubin v. MasterCard Int'l, LLC*, 342 F. Supp. 2d 217, 219 (S.D.N.Y. 2004).

"The presumption against federal jurisdiction is especially strong" where, as here, the removed action was brought to vindicate a state's sovereign interests in enforcing its own laws to protect its own residents from business practices within the state that are fraudulent, deceptive, or illegal. *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) ("the claim of sovereign protection from removal" is at "its most powerful form" where a state attorney general brings an action in state court to enforce state laws and alleges only state-law causes of action) (quotations omitted). Accordingly, "considerations of comity" should make federal courts "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983).

## ARGUMENT

No rule—certainly no clear one—prevents the OAG from vindicating New York's interests in enforcing its own consumer protection laws in its own courts. The sole basis offered by DailyPay is the removal statute. (Notice ¶ 5.) The Supreme Court has explained that actions "arise under" federal law for purposes of that statute in "two ways," *Gunn*, 568 U.S. at 257. *First*, "when federal law creates the cause of action asserted." *Id*. *Second*, when state law creates the cause of action, there remains "a special and small category of cases in which arising under jurisdiction still lies." *Id*. This occurs "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005)). "All four requirements must be met." *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., Inc.*, 116 F.4th 106, 115 (2d Cir. 2024).

Here, the Petition asserts solely claims created by New York law and does not raise any federal issue that is actually disputed, substantial, or capable of resolution without disrupting the

8

state-federal balance. The Court therefore should remand the Petition. *See* 28 U.S.C. § 1447(c) (where district courts lack subject matter jurisdiction, "the case shall be remanded.").

## I. THE PETITION ASSERTS NO CLAIM CREATED BY FEDERAL LAW

The OAG's Petition sets forth eight causes of action under New York's Executive Law § 63(12), a state law that authorizes the OAG to bring an action for relief when a person or business engages in repeated or persistent fraud or illegality in New York. *See People v. Citibank, N.A.*, No. 24 Civ. 659, 2025 WL 251302, at *4 (S.D.N.Y. Jan. 21, 2025) ("Under [Executive Law § 63(12)], any conduct which violates state or federal law is actionable, and it applies to all business activity accompanied by repeated acts of illegality.") (quotations omitted). It is well established that illegal conduct for purposes of Executive Law § 63(12) includes violations of federal law. *E.g. State v. Scottish-Am. Ass'n, Inc.*, 52 A.D.2d 528, 528 (N.Y. App. Div. 1976); *People v. Juul Labs, Inc.*, No. 452168/2019, 2022 WL 2473459, at *3 (N.Y. Sup. Ct. July 5, 2022).

In its Notice, DailyPay contends that Counts VII and VIII of the Petition are created by federal law, that the OAG's assertion of these claims under New York law is "a naked attempt" to avoid federal jurisdiction, and that the "real nature" of these claims is federal. (Notice ¶ 7.)

The gambit attempted by DailyPay was rejected by the Second Circuit eighteen months ago when Connecticut, as the OAG does here, asserted claims "under a single state statute." *State v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023). As DailyPay does here (*see* Notice ¶ 7), the *Exxon* defendant invoked the artful-pleading doctrine, quoted from *NASDAQ OMX Group v. UBS Secs., LLC*, 770 F.3d 1010 (2d Cir. 2014), and argued that the state was "attempting to avoid federal jurisdiction" by asserting state-law claims whose "true" nature was federal. 83 F.4th at 133–34. The Second Circuit held that this "cherry-picking" argument was "foreclosed by binding precedent." *Id.* The artful-pleading doctrine, it explained, applies only where Congress "expressly" authorizes removal of particular claims or those claims "are completely preempted by federal law."

9

*Id*. at 133–35. Here, DailyPay cites no specific removal authority for the claims at issue nor argues preemption. The Petition thus asserts state-law claims, as other courts have held. *See People v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 275–76 (S.D.N.Y. 2024) (the OAG's Executive Law § 63(12) claims "originate under New York State law" even though the fifth cause of action is based on the defendant "engaging in acts proscribed by" a specific federal statute).

This conclusion is reinforced by the simple fact that Executive Law and CFPA claims are distinct. For one, the Petition's claims require evidence that DailyPay's illegal conduct was both "repeated" and "persistent," N.Y. Exec. Law. § 63(12)—elements that do not exist in federal law. *See* 12 U.S.C. § 5531. The statutes of limitations for the claims also are quite different. *Compare* CPLR § 213(9) (six-year statute of limitations to "an action by the attorney general" under Executive Law § 63(12)) *with* 12 U.S.C. § 5564(g) (three-year statute of limitations). Finally, while DailyPay correctly observes that the Petition asserts, among other remedies, those that are available under the CFPA (Notice ¶ 7), New York's Court of Appeals has long held that Executive Law § 63(12) grants to courts the authority to impose penalties and other remedies provided by the statutes or regulations that give rise to the illegality at issue. *See, e.g.*, *People v. Apple Health & Sports Clubs*, 80 N.Y.2d 803, 806–07 (1992); *People v. Two Wheel Corp.*, 71 N.Y.2d 693, 696–97 (1988). In sum, the particular claims that the OAG asserts in the Petition are not and could never have been asserted under federal law—and thus federal law does not create them.

Indeed, DailyPay's argument cannot be squared with *Gunn*, in which the Supreme Court distinguished between claims that federal law ***creates*** and a "special and small" category of claims in which federal issues are ***necessarily raised***. DailyPay's Notice contends that federal law creates Counts VII and VIII in the Petition because, for the OAG to prevail, the OAG must establish that "DailyPay violated" the CFPA. (Notice ¶ 8.) But that is merely another way of saying that whether

10

DailyPay violated the CFPA is necessarily raised by the Petition—which the OAG does not dispute. DailyPay's argument that this means that federal law "creates" the cause of action would effectively moot the second category of claims discuss in *Gunn*—which require not **only** that a federal issue is necessarily raised, but also (i) an actual dispute that is (ii) substantial and whose (iii) resolution by the federal court will not disrupt federalism. That plainly is not the law.

The remaining cases cited in the Notice do not compel a different result. In *NASDAQ*, the Second Circuit acknowledged that the state-law claims would require a court to determine whether the defendant violated "its federal law duties to operate fair and orderly markets," yet it still held that the claims were "state law claims." 770 F.3d at 1019–22. DailyPay also quotes from *Broder v. Cablevision Systems Corp.*, but the quoted language and subsequent discussion focus on the four-part *Gunn* test; nothing in the opinion remotely suggests that the state-law claim at issue was created by federal law. 418 F.3d 187, 194–95 (2nd Cir. 2005). The same is true of *Wullschleger v. Royal Canin USA, Inc.*, in which the Eighth Circuit merely held that when "all four" of the *Gunn* test elements "are met, federal jurisdiction is proper." 953 F.3d 519, 522 (8th Cir. 2020).

## II.    DAILYPAY CANNOT SATISFY ITS BURDEN TO ESTABLISH THAT THIS COURT HAS "SUBSTANTIAL QUESTION" JURISDICTION

Because it cannot transmute the OAG's state-law claims into claims created by federal law, DailyPay must instead satisfy its burden of establishing that the Petition presents a federal question that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This, as the Second Circuit observed days ago, is a "slim category" of cases. *AMTAX Holdings 227, LLC v. CohnReznick LLP*, --- F.4th ---, 2025 WL 1241844, at \*6 (2d Cir. Apr. 30, 2025). Here, DailyPay cannot meet its burden as to the second, third, or fourth elements of this test—let alone all of them, as it must. *Sunvestment*, 116 F.4th at 115 (2d Cir. 2024).

11

**A.      DailyPay Does Not Identify any Federal Question that Is Actually in Dispute**

While the OAG does not dispute that the Petition necessarily raises issues under the CFPA, as it seeks relief provided by that law (Pet. at 36), DailyPay still must identify an issue of federal law that is ***actually disputed***. *See, e.g.*, *Gunn*, 568 U.S. at 259 (for an actual dispute there must be a "dispute respecting the effect of federal law" in question) (quotations omitted). The Notice offers nothing more than tautology: that an actual dispute of federal law exists because DailyPay the CFPA violations are "actually disputed by DailyPay." (Notice ¶ 9.) That is not enough.

With respect to Count VII, DailyPay elsewhere argues that the deception claims "***all depend*** on the OAG's flawed assumption that DailyPay's [Paycheck Advance] product is a loan." (DP Compl. ¶¶ 51–52.) But whether DailyPay's Paycheck Advances are loans and its fees are interest are questions of state law—not federal law—which is why DailyPay's preemptive suit advances extensive arguments from New York legal precedent. (*See id.* ¶¶ 37–50.) DailyPay does not and cannot seriously suggest that it is actually disputing that if Paycheck Advances are loans and associated fees are interest under New York law, the Company's representations to New Yorkers promoting "no interest" Paycheck Advances would have been deceptive.

As for Count VIII, DailyPay similarly concedes that it is derivative of New York law. (DP Compl. ¶¶ 51–52.) Moreover, Count VIII is premised on DailyPay's abusive lending violations of the CFPA's prohibitions on practices that materially interfere with, or take unreasonable advantage of, consumers. 12 U.S.C. § 5531(d). Yet the Notice identifies no legal dispute as to these statutory prohibitions, their scope or meaning, or the CFPA's application to DailyPay, and thus does not identify any disputed issue. *Cf. Grable*, 545 U.S. at 311, 315 (in dispute over notice requirements in 26 U.S.C. § 6335(a), "the meaning of the federal statute [was] actually in dispute").

**B.     The Petition Raises No Substantial Federal Question; It Merely Applies Federal Prohibitions to Specific Facts and Raises Key Matters of State Law**

DailyPay independently fails to establish federal jurisdiction because its Notice identifies no federal issue that is substantial. This inquiry evaluates "the importance of the issue to the federal system as a whole"; in other words, it "is not enough that the federal issue be significant to the particular parties," as "that will always be true when the state claim necessarily raises a disputed federal issue." *Gunn*, 568 U.S. at 260. "Classic example[s]" of substantiality justifying removal jurisdiction include cases challenging the constitutionality of an act of Congress, *id.* at 261 (citing *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180 (1921)), or the validity of a federal agency's action, *id.* at 260-61 (citing *Grable*, 545 U.S. at 315). Thus, it "is to be expected," as the Second Circuit noted last year, that "most federal law questions raised in connection with state law claims will not be deemed substantial." *Sunvestment*, 116 F.4th at 116 (quotations omitted).

In its Notice, DailyPay contends that the Petition presents a "substantial" federal question "because it requires a precedent-setting determination of whether an entire industry of earned wage access providers has been misrepresenting itself under the CFPA." (Notice ¶ 9.) This assertion is both legally insufficient, as Congress has already declared that state courts are wholly adequate forums for the OAG's claims premised on the CFPA, and factually unsupportable.

As an initial matter, it is well established that state courts are "competent to apply federal law." *Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014) (*per curiam*). Thus, another district court just last year remanded a special proceeding in which the OAG asserted an Executive Law § 63(12) claim premised on violations of a federal statute, rejecting the argument—which is functionally the same as that advanced by DailyPay here—that federal law does not permit "the State to wrap a [federal] claim in state-law packaging." *Sirius*, 735 F. Supp. 3d at 279. The *Sirius* Court observed that the federal law in question "expressly reserves the right of the

13

[OAG] to do exactly what the State did here: bring suits in state court under state law." *Id*. Here, too, the CFPA provides that nothing "shall be construed as altering, limiting, or affecting the authority of a State attorney general" to "bring an action or other regulatory proceeding arising solely under the law in effect in that State." 12 U.S.C. § 5552(d)(1). Thus, federal law authorizes the OAG to do precisely what it has done: bring a state-law claim in state court.

Indeed, the case for remand here is ***even stronger*** than in *Sirius*. Under *Grable*, this Court has jurisdiction "only if exercising 'jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts.'" *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 420 (S.D.N.Y. 2020) (quoting *Grable*, 545 U.S. at 313). Here, Congress not only preserved the OAG's state-based authority; it ***expressly authorized*** the OAG and other state attorneys general to bring actions to enforce the provisions of the CFPA ***in state courts***. *See* 12 U.S.C. § 5552(a)(1) ("the attorney general (or the equivalent thereof) of any State may bring a civil action in the name of such State in any district court of the United States in that State or in a State court that is located in that State" to "enforce provisions of this title"). DailyPay cannot possibly establish the existence of a substantial question of crucial significance to the federal system that demands federal court intervention when Congress has ***already concluded*** that state courts are ***equally appropriate*** forums for enforcing violations of that federal law.

This is particularly true where, as here, the facts presented in the Petition do not require a state court to tread new federal ground. While the CFPA was enacted in 2008, federal prohibitions on deceptive acts or practices, such as the FTC Act, have been in place for decades, providing extensive precedent. Nor is the question complex: DailyPay promised New Yorkers "no interest" Paycheck Advances; if the OAG establishes that the Paycheck Advances are in fact loans and the associated fees are in fact interest, the deception is not difficult to show. The CFPA's abusiveness

14

prohibitions, meanwhile, are laid out in detail in statute and have been the subject of extensive prior litigation, including litigation involving usurious lending, *e.g.*, *Pennsylvania v. Think Finance, Inc.*, No. 14 Civ. 7139, 2019 WL 6217376 (E.D. Pa. Nov. 20, 2019); *CFPB v. NDG Fin. Corp.*, No. 15 Civ. 5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016), and litigation involving reasonable reliance on others, *e.g.*, *CFPB v. ITT Educ. Servs.*, 219 F. Supp. 3d 878, 920 (S.D. Ind. 2015). Applying these straightforward statutory prohibitions does not necessitate federal court intervention. *See Sirius*, 735 F. Supp. 3d at 280 (finding no substantial question where multiple federal authorities had already "weighed in" on similar issues and thus "the state court will not be writing against a blank slate and may not even need to break new ground").

Beyond Congress's clear directive in the CFPA, DailyPay's suggestion that the Petition "requires a precedent-setting determination" that will govern "an entire industry" (Notice ¶ 9) is flatly incorrect. For one, the Petition concerns the conduct of DailyPay—and that of DailyPay alone. The advertisements and form communications are DailyPay's own materials. (Pet. ¶¶ 23–46.) The written agreements with both employers and workers who obtain Paycheck Advances are DailyPay's own contracts. (Pet. ¶¶ 32–33, 47–49, 67, 84–91.) And the data analysis underlying the Petition and reflected in its statistics, charts, and graphs analyzing usage patterns by New York workers concern DailyPay's own transactions. (Pet. ¶ 10.) This is not one of "those exceptional cases" that implicates "broad consequences to the federal system or the nation as a whole" that goes "beyond the application of federal law." *Sunvestment*, 116 F.4th at 115.

This proceeding also does not involve "purely legal" issues but instead fact-bound issues for which state courts are "competent to apply federal law." *People v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 134 (S.D.N.Y. 2021). Resolving Counts VII and VIII will require intensive review of the statements and practices of DailyPay. This is particularly true of Count VIII, which involves

15

the flexible standards of the CFPA's abusiveness prohibition, as to which courts regularly find disputed facts. *See, e.g.*, *CFPB v. Access Funding, LLC*, No. 16 Civ. 3759, 2021 WL 2915118, at *28–30 (D. Md. Jul. 12, 2021) (disputes of material fact "as to whether the company was engaged in abusive conduct with respect to the advances"); *Think Finance, Inc.* 2019 WL 6217376 at *7 (finding "material issues of facts" as to whether defendants took "unreasonable advantage of the consumers' lack of understanding"). Courts routinely hold that application of federal prohibitions to specific facts do not raise substantial issues of federal law warranting removal.[1]

The variety of practices in the Paycheck Advance industry in which DailyPay competes also undermines its substantiality claim.[2] Some providers, like DailyPay, contract with employers, while others offer Paycheck Advances directly to consumers. Some providers facilitate employers advancing money directly to workers, while DailyPay advances its own funds. Fee structures also differ widely, as does the imposition of "tips" that many providers seek from borrowers. Indeed, the OAG filed a second action against a distinct Paycheck Advance provider on the same day that this special proceeding was filed. (*People v. MoneyLion Inc.*, Index No. 451303/2025 (N.Y. Sup. Ct.).) In sum, resolution of the OAG's claims that may implicate federal law is unlikely to have any substantial impact on Paycheck Advance programs that are distinct from DailyPay. *See Sirius*,

---

[1] *See, e.g.*, *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 9367, 2018 WL 5619957, at *6 (S.D.N.Y. Aug. 7, 2018) (whether defendant acted as "prudent person" under federal law is "highly fact-specific question" not warranting removal); *In re G.M. LLC Ignition Switch Litig.*, 69 F. Supp. 3d 404, 415 (S.D.N.Y. 2014) (remand where whether defendant "complied with [the federal statute] turns on . . . a highly 'fact-bound and situation-specific' inquiry"); *Caggiano v. Pfizer, Inc.*, 384 F. Supp. 2d 689, 691 (S.D.N.Y. 2005) ("there is no federal question jurisdiction over garden-variety state-law claims resting on federal mislabeling").

[2] For industry summaries, *see* Consumer Fin. Protection Bureau, *Data Spotlight: Developments in the Paycheck Advance Market* (Jul. 18, 2024), *available at https://www.consumerfinance.gov/data-research/research-reports/ data-spotlight-developments-in-the-paycheck-advance-market/;* Cal. Dep't of Fin. Protection & Innovation, *2021 Earned Wage Access Data Findings* (2023), *available at https://dfpi.ca.gov/wp-content/uploads/sites/ 337/2023/03/2021-Earned-Wage-Access-Data-Findings-Cited-in-ISOR.pdf.*

735 F. Supp. 2d at 280 (finding "fact-intensive issue" as to whether respondent's cancellation procedures "are simple," as required by the federal law at issue, would "provide little guidance in future cases" as those would "involve completely different cancellation procedures"); *see also AMTAX*, --- F.4th ---. 2025 WL 1241844 at *4 ("By contrast, an issue that is fact-bound and situation-specific is not sufficiently substantial to permit federal question jurisdiction.").

Indeed, the pure questions of law at issue are the state law questions of whether Paycheck Advances and related fees are "loans" and "interest" under New York statutes. (Pet. ¶¶ 113–24.) These terms do not appear at all in the CFPA. *See generally* 12 U.S.C. § 5481 *et seq.* This poses two fatal problems for DailyPay's attempt at removal: *First*, the true substantial questions of law at issue are ones of ***state law***—not federal law—and thus weigh heavily in favor of remand to avoid disruption of the balance of state and federal court responsibilities, as discussed below. (*See infra* 18–20.) *Second*, resolution of these questions, even if applied with equal force to all Paycheck Advance providers, would at most affect those providers' operations ***in New York***. That is not sufficient to establish a ***federal*** interest warranting removal jurisdiction. *See Sirius*, 735 F. Supp. 3d at 280 (observing that substantial questions are "issues of broad importance to the national economy or the functioning of the government'); *see also AMTAX*, --- F.4th ---, 2025 WL 1241844 at *5 (substantial questions "have significance for the federal system").

C.     **Removal Will Disrupt the Balance of Federal and State Judicial Responsibilities While Remand Will Promote Federalism and Comity**

DailyPay likewise cannot establish that asserting removal jurisdiction will cause no rupture in the "congressionally approved balance of federal and state juridical responsibilities." *Grable*, 545 U.S. at 314. This test recognizes that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Qatar*, 432 F. Supp. 3d

at 420; *accord People v. Dell*, 514 F. Supp. 2d 397, 401 (N.D.N.Y. 2007) ("[I]t is necessary to consider issues beyond the mere presence of a disputed federal issue, such as 'the interrelation of federal and state authority . . . .'") (quoting *Grable*, 545 U.S. at 314). Here, a multitude of compelling factors weigh heavily against removal and in favor of remand to state court.

As an initial matter, Congress already has made plain its view as to the balance of federal and state court responsibilities under the CFPA by expressly authorizing the OAG to bring a proceeding in state court to enforce the federal prohibitions. 12 U.S.C. § 5552(a)(1). Were it true that any action brought by a state attorney general in state court to enforce the CFPA's provisions is removable, it would disrupt the balance Congress struck in the legislation. *See Sirius*, 735 F. Supp. 3d at 281 ("Because the ability of the [OAG] to bring this suit was expressly preserved by [federal law], the Court finds that it would be inconsistent with the division of responsibilities that Congress set forth in [federal law] for the Court to exercise jurisdiction in this case.").

Beyond Congress, the considerations of comity that are central to this inquiry are at their "zenith where, as here, the suit was brought by a State itself." *In re G.M.*, 69 F. Supp. 3d at 409. This special proceeding is brought under New York's core consumer protection statute authorizing the OAG alone to pursue relief. The usury prohibitions at the center of the dispute reflect centuries of New York public policy regarding safe and responsible lending. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 327–33 (2021) (noting that "New York's prohibitions on usury extend back to at least 1717" and their history "reflects the legislature's consistent condemnation of the evils of usury") (quotations omitted). And resolutions of the disputes over the scope of New York law will be felt in New York alone—even as to Counts VII and VIII, which DailyPay argues all depend on New York law. (DP Compl. ¶ 52.) No federal forum is needed to address such matters.

*See Dell*, 514 F. Supp. 2d at 401 ("Even if some analysis of federal law was necessary, . . . refusing to remand this case would unreasonably strip the state of judicial responsibility.").

Moreover, federal courts are properly reluctant to exercise jurisdiction over state law issues of first impression. *See Young v. New York City Transit Auth.*, 903 F.2d 146, 163–64 (2d Cir. 1990) ("needless decisions of state law should be avoided" in favor of "procuring for them a surer-footed reading of applicable law [from a state court]"); *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 370 (S.D.N.Y. 2000) (no supplemental jurisdiction over state-law claims "of the type of novel and complex state law issues which federal courts have no business deciding, especially on a matter of first impression"). The OAG's special proceeding against DailyPay (and its related suit against MoneyLion) are the first-ever applications of New York's usury laws to an emerging industry. Asserting removal jurisdiction would disrupt the balance of judicial responsibilities—particularly where the federal questions are neither novel nor substantial.

The OAG also brought this special proceeding using specific procedures afforded to it by New York's legislature, *see* Exec. Law § 63(12)—procedures that are unavailable in this federal forum. As the Second Circuit has explained, "the role and purposes of the 'special proceeding' in New York procedure" are unique and "differ[] from a civil action in several ways," including that it is "designed to facilitate a 'summary disposition' of the issues presented" with "the ease, speed, and inexpensiveness of a mere motion" by, among other things, barring third party practice, intervention, and "a trial calendar preference." *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986). New York law expressly authorizes the OAG to enforce New York's longstanding public policies, including those against usurious lending, through this particular mechanism, reinforcing the "disruptive portent" that an exercise of federal jurisdiction would have here. *Grable*, 545 U.S. at 314; *see also Sirius*, 735 F. Supp. 3d at 281–82 (removal would "force the State to forgo the

19

procedural mechanisms that are uniquely available to it in a special proceeding in a state forum to obtain 'expeditious' relief."); *Adigun v. IRS*, No. 20 Civ. 3676, 2021 WL 4709751, at *7 (S.D.N.Y. Jul. 27, 2021) (report and recommendation not to exercise removal jurisdiction due, among other reasons, to "the State Court's expertise in handling its own special proceedings").

Finally, assuming jurisdiction over state consumer protection statutes that implicate federal law would materially burden federal courts. Many state statutes have federal analogues and it is common for states to pursue concurrent claims in a single forum. This practice promotes judicial economy, particularly since the analogous statutes are often governed by similar standards. As the *In re G.M.* Court recognized: It "is not the 'rare' state consumer protection suit that involves alleged violations of federal law; instead, 'state courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes.'" 69 F. Supp. 3d at 415 (quoting *Nevada*, 672 F.3d at 676). Opening the federal-court doors to this special proceeding and others would "materially affect, or threaten to affect, the normal currents of litigation" by diverting claims and suits to federal court. *Grable*, 545 U.S. at 315, 319.

## CONCLUSION

For all of the above reasons, Counts VII and VIII of the Petition do not "arise under" federal law, and thus no supplemental jurisdiction exists over the remaining Counts, as to which DailyPay asserts no alternative theory of jurisdiction. (Notice ¶ 10.) The OAG thus respectfully requests that the Court remand the Petition to the Supreme Court of New York, County of New York.

Dated: May 12, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

By: */s/ Christopher L. Filburn*
Christopher L. Filburn
*Assistant Attorney General*
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, New York 10005
Tel.: 212.416.8303
Email: christopher.filburn@ag.ny.gov

Of counsel:

Jane M. Azia
*Bureau Chief*

Laura J. Levine
*Deputy Bureau Chief*

*Counsel for Petitioner*
*People of the State of New York*

## CERTIFICATION

CHRISTOPHER L. FILBURN, an attorney duly admitted in the State of New York and authorized to practice before this Court, certifies under Local Civil Rule 7.1(c) and Paragraph III.D of the Court's Individual Practices, dated March 17, 2025, as follows:

1.    I am an Assistant Attorney General assigned to the New York State Office of the Attorney General's Bureau of Consumer Frauds and Protection.

2.    The foregoing Memorandum of Law complies with the word count limits set forth both in Local Civil Rule 7.1(c) and Paragraph III.D of the Court's March 17, 2025 Individual Practices in that it contains, exclusive of captions, indexes, and signature blocks, 6,935 words, according to the word count function of the word-processing program used to prepare it.

Dated: May 12, 2025
       New York, New York

_/s/ Christopher L. Filburn_
Christopher L. Filburn